**Ralph W. KEITH, et al., Plaintiffs,**

v.

**John A. VOLPE, as Secretary of Transportation, et al., Defendants.**

**No. CV 72–355–HP.**

United States District Court, C.D. California.

Oct. 22, 1985.

See also 618 F.Supp. 1132.

Center for Law in the Public Interest, Bill Lann Lee, Elsa Leyva, Los Angeles, Cal., for plaintiffs.

Department of Transp., Bruce Behrens, Joel G. Philipp, Sacramento, Cal., for State of Cal.

Burke, Williams & Sorensen, Richard R. Terzian, Cristina L. Sierra, Los Angeles, Cal., for City of Hawthorne.

Office of Atty. Gen., State of Cal., Los Angeles, Cal., for Dept. of Housing and Community Development.

Richard H. Levin, A Law Corp., Stephen A. Seideman, Los Angeles, Cal., for Goldrich & Kest, Inc., a California Corp.

## ORDER RE: AWARD OF ATTORNEYS' FEES AND OUT–OF–POCKET EXPENSES

PREGERSON, Circuit Judge, sitting by designation.

On November 21, 1984, plaintiffs filed an application for award of attorneys' fees and out-of-pocket expenses. Following discovery undertaken by the California Department of Transportation ("Caltrans"), full briefing of the issues by both parties and a hearing, this court took the matter under submission. Upon due deliberation and consideration of the points and authorities, declarations, and exhibits filed in support of and in opposition to this application, this court hereby finds and concludes as follows:

1. This court has recognized the important public benefit secured through plaintiffs' lawyers efforts in litigating and settling this case. *See Keith v. Volpe*, 501 F.Supp. 403, 411–12 (C.D.Cal.1980).

2. The Amended Final Consent Decree ("the Decree") is a blueprint for an unprecedented public works program that provides for substantial benefits including: a massive multi-million dollar housing program designed to accommodate residents displaced by the Century Freeway and to replenish the housing stock in the predominantly low-income and minority communities within the path of the freeway; the Century Freeway affirmative action employment and job training programs to ensure that minorities, women, and residents of the area affected by freeway construction receive a fair share of the 20,000 jobs created by the project; the establishment of the Office of the Advocate to assist the thousands of residents affected by the Century Freeway in securing their rights and entitlements to benefits; and the innovative design of the Century Freeway to minimize noise and air pollution, and to incorporate carpool lanes and a transitway for rail service (including passenger stations with park-and-ride facilities).

The Decree itself is more like a working constitution than a detailed blueprint. All problems could not have been reasonably anticipated at the time the Decree was drafted and approved. Cooperation between the parties was always viewed as an essential element in the creation, approval and administration of this Decree that commits resources and people to an estimated fifteen-year course of action.

3. The first two years after the Decree for which a supplemental fee was awarded

(1980–1982) involved extensive planning by Caltrans (engineering and redesigning the freeway and transitway), by Housing and Community Development ("HCD") (preparation of the Housing Plan and approval by the Housing Advisory Committee), by the Century Freeway Affirmative Action Committee ("CFAAC") (selecting Board members, hiring staff, developing and refining the Employment Action Plan), and by the Corridor Advocate ("the Advocate") (hiring staff, developing programs to provide assistance and counsel to displacees).

4. The fee application now before the court covers a period (1982–1984) when the Century Freeway project was moving into a more critical stage of development. Planning is giving way to action. Housing is now being built for displacees. Many contracts are being let for both housing and freeway construction. Economic opportunities for minorities and women are starting to be realized.

During the past two years, the pace and amount of decision-making related to the Decree's interpretation and implementation has accelerated. Among the activities in which plaintiffs' counsel, the Center for Law in the Public Interest ("the Center"), have productively been involved are:

—Minority Business Enterprise/Female Business Enterprise certification process: filing motion followed by informal discovery which resulted in significant changes to the Caltrans certification program.

—Contract award process: Center mediation of CFAAC and Caltrans disputes related to awarding to lowest "responsive bidder" and process used for withdrawal of bids.

—Contract compliance: actions taken to implement Decree by ensuring that minority and women contractor goals are met.

—Opinions interpreting the Decree: numerous written requests from entities for plaintiffs' written opinion on various aspects of the Decree's interpretation where there existed either uncertainty or differing interpretations.

—Corridor Advocate, scope of authority regarding appraisals: motion filed, argued and order issued requiring Caltrans to fund the Advocate's appraisal review program.

—Motion to enjoin state court proceedings that threatened to delay awarding of housing contracts: motion filed, argued and order issued enjoining state court proceedings.

—Watts Labor Community Action Committee ("WLCAC"): responding to court requests to develop a method for WLCAC participation in the housing program in the Watts area.

—Tenant relocation issue: assisting Advocate's Office in resolving disputes between Advocate's Office and Caltrans regarding orderly removal of remaining corridor residents.

—Housing priorities for displacees: mediating disputes between the Advocate's Office and Caltrans to ensure the preservation of priority for displacees who are forced out prior to availability of housing.

—Willco Dump: responding to CFAAC's concerns regarding problems related to this major contract.

—Budget of Decree entities: review and adjustment of budget procedures, as contemplated by the Decree.

—Coordination meetings: conducting numerous meetings of all parties and entities per court's request to resolve outstanding points in dispute among parties and entities; drafting, circulating and filing minutes with the court, fully identifying for the court all issues discussed, resolved, and left unresolved.

—Decree amendments: special meetings of all parties and entities to consider various proposed amendments to the Decree to clarify points in dispute.

—Status conferences: preparation of quarterly reports for court's Quarterly Conference on status of project.

■ 5. Caltrans opposes plaintiffs' entitlement to supplemental attorneys' fees on several grounds. First, Caltrans asserts that the application for fees is "novel" and a case of "first impression." Caltrans is incorrect. This court reserved jurisdiction to award supplemental attorneys' fees in its Memorandum and Order of March 31, 1980. 501 F.Supp. at 415. On November 29, 1982, this court awarded plaintiffs' counsel a supplemental award of attorneys' fees. Plaintiffs' counsel's work during the present application period is similar to work previously found to be compensable. This application for fees is also compensable pursuant to this court's continuing jurisdiction to award supplemental attorneys' fees. A supplemental award of attorneys' fees is appropriate in this case pursuant to 42 U.S.C. § 1988 and the common benefit/substantial benefit doctrine. *See* 501 F.Supp. at 405–10.

■ When statutory or equitable entitlement to court-awarded fees for legal work on the merits has been established, a court may award fees for time spent after final judgment monitoring and in other ways effectuating the judgment. *See e.g. Northcross v. Board of Education,* 611 F.2d 624, 637 (6th Cir.1979), *cert. denied,* 447 U.S. 911, 100 S.Ct. 2999, 64 L.Ed.2d 862 (1980); *see also Bond v. Stanton,* 630 F.2d 1231, 1233–34 (7th Cir.1980), *cert. denied,* 454 U.S. 1063, 102 S.Ct. 614, 70 L.Ed.2d 601 (1981); *Miller v. Carson,* 628 F.2d 346, 348–49 (5th Cir.1980); *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.,* 540 F.2d 102, 121 (3d Cir.1976) (en banc); *Stenson v. Blum,* 512 F.Supp. 680, 684 (S.D.N.Y.), *aff'd,* 671 F.2d 493 (2d Cir.1981), *aff'd in part and rev'd in part on other grounds,* 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984); *Bates v. Pacific Maritime Ass'n,* 19 Empl. Prac. Dec. (CCH) ¶ 9132 at 6888 (C.D.Cal. 1979); *McPherson v. School District # 186,* 465 F.Supp. 749, 756, 759 (S.D.Ill. 1978); *Peacock v. Drew Municipal Separate School District,* 433 F.Supp. 1072, 1076–77 (N.D.Miss.1977), *aff'd,* 611 F.2d 1160 (5th Cir.1980).

■ 6. Second, Caltrans contends that plaintiffs' counsel's work has involved activity that was delegated to CFAAC and the Advocate.

The duties and responsibilities of CFAAC are expressly stated in Exhibit C of the Decree. These include: to prepare its budget; to review and prepare written comments on the responsiveness of all bids and contracts; to conduct periodic reviews of each contractor's performance; to receive complaints; to conduct regular on-site inspection and interviews to assist in the process of advising equal employment, minority business participation and regional employment and business; to help locate and recruit employees, contractors and subcontractors and to establish effective programs for contractors and subcontractors who are unable to meet Minority Business Employment ("MBE") and Equal Employment Opportunity goals.

The Decree instructs the Advocate: to establish a local office in the general area where the remaining displacees reside; to monitor state defendants' compliance with all applicable state and federal regulation pertaining to the relocation rights of the displacees; to review and comment upon the draft texts of notices and information sheets to be provided to displacees and the strategy for notification of tenants of rental units of their eligibility for benefits; to receive and record displacee complaints; to provide information to displacees relevant to benefits under applicable federal and state laws and regulations; and to assist displacees who have complaints or a disputed claim with Caltrans.

The work performed by the Center in connection with CFAAC and the Advocate

as described in the time records cannot generally be characterized as a duplication or usurpation of responsibilities completely delegated to CFAAC or the Advocate. The extensive supporting documentation to plaintiffs' fee application establishes how much time was spent by each attorney on what CFAAC-related and Advocate-related matters.

7. Third, Caltrans contends that plaintiffs may only recover attorneys' fees when they have filed a motion and are the "prevailing party." This rule applies only to prejudgment litigation activities where a plaintiff has brought several distinct causes of action and a court must determine on which issues plaintiff has prevailed. *See Miller v. Carson,* 628 F.2d at 348–49 & n. 3. In post-judgment circumstances, however, monitoring, implementation, and enforcement activities that are reasonable and necessary are compensable. The practical rationale for awards of attorneys' fees under section 1988 is to promote enforcement of the civil rights laws by compensating lawyers for time spent vindicating rights those laws are designed to protect. *See e.g. Bond v. Stanton,* 630 F.2d at 1233–34. However, if fees were barred for post-judgment monitoring and other enforcement activities, the purpose of section 1988 would be thwarted: "Services devoted to reasonable monitoring of the court's decrees, both to insure full compliance and to ensure that the plan is indeed working ... are compensable services. They are essential to the long-term success of the plaintiff's suit." *Northcross,* 611 F.2d at 637.

Moreover, the legislative history of section 1988 is specific that " 'for purposes of the award of counsel fees, parties may be considered to have prevailed when they vindicate rights through a consent judgment or without formally obtaining relief.' " *Maher v. Gagne,* 448 U.S. 122, 129, 100 S.Ct. 2570, 2575, 65 L.Ed.2d 653 (1980) (quoting S.Rep. No. 1011, 94th Cong.2d Sess. 5, *reprinted in* 1976 U.S.Code Cong. & Ad.News 5908, 5912). Thus, a rule limiting an award of fees to matters on which a party formally prevails by motion is inconsistent with section 1988.

The Decree is a blueprint for an innovative and socially beneficial construction program which will take years to complete. Predictably, as the Decree is implemented, disputes concerning its interpretation will arise. This court has encouraged the parties to resolve disagreements in a non-adversarial manner and has requested that the parties meet to resolve their differences amicably. Resolving disputes through formal motions is more time consuming and expensive and produces more friction and more delay.

8. Fourth, Caltrans contends that plaintiffs must apply for attorneys' fees after each "successful" motion. For the reasons stated above, plaintiffs are not limited to "successful motions" in the application for attorneys' fees. However, the court believes that the quarterly filing of a fee application would be less time consuming and more efficient, and will enable the court to monitor closely counsel's activities.

9. In computing a reasonable attorneys' fee award, this court follows the approach set forth in *Moore v. Jas. A. Matthews & Co.,* 682 F.2d 830, 840–41 (9th Cir.1982). This approach uses the lodestar analysis of *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.,* 487 F.2d 161, 167–69 (3d Cir.1973) as a procedure for ordering the examination of the twelve factors listed in *Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 67, 70 (9th Cir. 1975), *cert. denied,* 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976).

10. In determining the number of hours for which plaintiffs' counsel are entitled to compensation, this court has considered the time and labor reasonably required of and expended by counsel in preserving the substantial benefits of the original Decree and in monitoring its proper implementation, taking into account the nature of the legal services provided and the difficulty of the issues involved. Plaintiffs have submitted in support of their application weekly time records for all attorneys, law clerks, and paralegals documenting the specific work

performed and the time spent on each activity during every week. Plaintiffs provided Caltrans with a further breakdown of hours per task during discovery. Plaintiffs also submitted a chronological summary overview of activities undertaken and issues addressed with cross-references to a two-volume, 965–page appendix of relevant documents prepared by plaintiffs during the period. The court has considered the weekly time records of all attorneys, law clerks, and paralegals, the chronological summary of activities and two-volume appendix of relevant documents, and the declarations setting forth the method of preparing the time records. The court has also considered Caltrans' computer analysis of hours spent by plaintiffs' counsel. The court notes that Caltrans does not challenge plaintiffs' representation that the hours claimed were actually spent.

11. Caltrans states general objections to the hours claimed on the basis that time spent was not necessary or reasonable or that work was not performed efficiently. The comprehensive record, however, supports the finding that most of the hours claimed were reasonably spent and were related to the enforcement and implementation of the Decree.

12. In setting an appropriate hourly rate for each attorney, law clerk and paralegal, this court has taken into account the skill necessary to perform the legal services properly, the preclusion of other legal work due to continued representation in this action, the prevailing community rates and customary fee for similar services, the experience, reputation and ability of the attorneys, and the desirability of this public interest case. The court has reviewed the six declarations submitted by both parties regarding the prevailing community rates. The declarations submitted by plaintiffs are of four attorneys from major law firms in the Los Angeles area who are familiar with plaintiffs' counsel's work. The two declarations submitted by State defendant Caltrans are also of attorneys from major Los Angeles law firms. The rates requested by plaintiffs are at the top end of the range represented by the six declarations.

The court has also reviewed the resumes of Center attorneys, law clerks, and paralegals. The use of current hourly rates is appropriate to compensate for inflation. *See Burgess v. Premier Corp.*, 727 F.2d 826, 841 (9th Cir.1984).

■ 13. Upon consideration of the factors cited above and extensive information and briefing by the parties, this court has eliminated from plaintiffs' request hours spent for the following items: investigating asserted embezzlement within Advocate's office; media and political activities; private legal services for Mrs. Keith; and 50 percent of the hours claimed preparing attorneys' fees claims. The court has also fixed the hourly rates for those rendering legal services on behalf of plaintiffs. Accordingly, the court finds the following number of hours and hourly rates are fair and reasonable:

|  | TOTAL HOURS × | CURRENT HOURLY RATE = | TOTAL BASE BILLING |
|---|---|---|---|
| John R. Phillips | 861.75 | 175.00 | 150,806.25 |
| L. Geoffrey Cowan | 57.25 | 175.00 | 10,018.75 |
| Bill Lann Lee | 355.05 | 135.00 | 47,931.75 |
| Fredric D. Woocher | 69.95 | 120.00 | 8,394.00 |
| Michael Gendler | 9.00 | 80.00 | 720.00 |
| Lee Ann Meyer | 491.50 | 80.00 | 39,320.00 |
| Cynthia D. Robbins | 1190.35 | 80.00 | 95,228.00 |
| Elsa Leyva | 209.10 | 85.00 | 17,773.50 |
| Mary Newcombe | 20.00 | 50.00 | 1,000.00 |
| Carol Bettencourt | 61.80 | 50.00 | 3,090.00 |
| Joyce Kawahata | 81.25 | 50.00 | 4,062.50 |
| Ann Cohen | 16.00 | 50.00 | 800.00 |
| Mary Watson | 450.45 | 45.00 | 20,270.25 |
| LODESTAR AMOUNT: |  |  | $399,415.00 |

Accordingly, the court concludes that plaintiffs are entitled to reasonable attorneys' fees in the amount of $399,415.00.

■ 14. Plaintiffs have also sought reimbursement of $7,985.00 for their counsel's out-of-pocket expenses. These expenditures include costs of duplicating, mailing, long distance telephone, mileage and parking, and out-of-town travel. This court finds that these documented expenses were reasonably spent, were necessary to the effective and successful representation of the plaintiffs' interests, and are authorized for inclusion in a reasonable

attorneys' fee award. Declarations submitted by both parties establish that current practice is to bill separately for these expenses.

THEREFORE, IT IS HEREBY ORDERED that the California Department of Transportation shall pay plaintiffs' counsel, the Center for Law in the Public Interest, the sum of $407,400.00, plus interest at the legal rate from the date of entry of this Order.