833 F.2d 850
 18 Envtl. L. Rep. 20,616
 Ralph W. KEITH and Esther May Keith, husband and wife;
Harold E. Grady and Edith W. Grady, husband and
wife; Harlow Seel and Virginia Seel,
husband and wife; et al.,
Plaintiffs-Appellees,
v.
John A. VOLPE, as Secretary of Transportation, et al., Defendants,
and
State of California, Department of Transportation,
Defendant-Appellant.
 No. 85-6591.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted April 9, 1987.
Decided Dec. 3, 1987.
 
 Frederick Graebe, Sacramento, Cal., for defendants-appellants.
 John R. Phillips and Stephen M. Cutler, Center for Law in the Public Interest, Los Angeles, Cal., for plaintiffs-appellees.
 Appeal from the United States District Court for the Central District of California.
 Before SNEED, BOOCHEVER and DAVID R. THOMPSON, Circuit Judges.
 DAVID R. THOMPSON, Circuit Judge:
 
 
 1
 The California State Department of Transportation (Caltrans) appeals from the district court's order awarding supplemental attorney fees and expenses under 42 U.S.C. Sec. 1988 to the Center for Law in the Public Interest (Center). Keith v. Volpe, 643 F.Supp. 37 (C.D.Cal.1985). The Center is legal counsel for Ralph W. Keith, et al. (plaintiffs). The award of attorney fees was for work done by the Center monitoring Caltrans' performance under, and assisting in the implementation of, a 1980 consent decree entered into by the parties to resolve plaintiffs' 1972 challenge to the building by Caltrans of the Century Freeway in Los Angeles. The district court's jurisdiction was originally based on 5 U.S.C. Secs. 701-06 and 28 U.S.C. Secs. 1331, 1343(a)(3) and (4), and 1361. The district court reserved jurisdiction to make supplemental awards of attorney fees in its first order granting attorney fees following entry of the consent decree. Keith v. Volpe, 501 F.Supp. 403, 415 (C.D.Cal.1980). We have jurisdiction under 28 U.S.C. Sec. 1291 and we affirm.BACKGROUND
 
 
 2
 On February 16, 1972, individuals residing in the path of the proposed Century Freeway in Los Angeles, together with the National Association for the Advancement of Colored People (NAACP), the Sierra Club, the Environmental Defense Fund and the Freeway Fighters, brought suit in the United States District Court for the Central District of California against the Federal Highway Administration, Caltrans and several federal and state government officials. The plaintiffs sought to halt construction of the Century Freeway because the project as originally planned allegedly violated the fifth and fourteenth amendments to the United States Constitution, and the Federal-Aid Highway Act of 1968, 23 U.S.C. Sec. 128(a), the National Environmental Policy Act of 1969, 42 U.S.C. Secs. 4321-4347, the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. Secs. 4601-4655, the Urban Mass Transportation Act of 1964, 49 U.S.C. Secs. 1601-1612, and the California Environmental Quality Act of 1970, Cal.Pub.Res.Code Secs. 21000-21151.
 
 
 3
 It was alleged that construction of the freeway would displace approximately 21,000 persons from their residences without providing alternative housing. These displaced persons were alleged to be predominately from minority, low-income backgrounds who, without assistance, would have substantial difficulty finding replacement housing in the Los Angeles area. It was also contended that the new freeway would produce a significant amount of air and noise pollution. The district court granted a preliminary injunction enjoining construction of the Century Freeway until the defendants complied with applicable federal and state laws. Keith v. Volpe, 352 F.Supp. 1324 (C.D.Cal.1972), aff'd sub nom., Keith v. California Highway Commission, 506 F.2d 696 (9th Cir.1974) (en banc), cert. denied, 420 U.S. 908, 95 S.Ct. 826, 42 L.Ed.2d 837 (1975).
 
 
 4
 After seven years of study, negotiation and planning, the parties reached a settlement designed to allow the Century Freeway project to proceed. A consent decree was approved by the district court on October 11, 1979. Keith, 501 F.Supp. 403. The consent decree provided for a large scale housing program, affirmative action and job training programs, and an environmentally sensitive design for the Century Freeway.
 
 
 5
 The decree required the state to create and fund the Century Freeway Affirmative Action Committee (CFAAC) and the Office of the Corridor Advocate (Advocate). The CFAAC was given responsibility "to prepare its budget; to review and prepare written comments on the responsiveness of all bids and contracts; to conduct periodic review of each contractor's performance; to receive complaints; to conduct regular on-site inspection and interviews to assist in the process of advising equal employment, minority business participation and regional employment and business; to help locate and recruit employees, contractors and subcontractors; and to establish effective programs for contractors and subcontractors who are unable to meet Minority Business Employment ... and Equal Employment Opportunity goals." Keith, 643 F.Supp. at 41. The Advocate was given responsibility "to establish a local office in the general area where the remaining displacees reside; to monitor state defendants' compliance with all applicable state and federal regulations pertaining to the relocation rights of the displacees; to review and comment upon the draft texts of notices and information sheets to be provided to displacees and the strategy for notification of tenants of rental units of their eligibility for benefits; to receive and record displacee complaints; to provide information to displacees relevant to benefits under applicable federal and state laws and regulations; and to assist displacees who have complaints or a disputed claim with Caltrans." Id.
 
 
 6
 The decree also provided that the court would consider an application for attorney fees for the Center for its work on behalf of the plaintiffs. Caltrans reserved the right to challenge both the Center's entitlement to fees and the amount awarded. The Center filed its fee application, and on March 31, 1980 the district court ordered Caltrans to pay the Center $2,229,313.11 in attorney fees and expenses. This was the first fee award in the case. The district court stated the award was made under 42 U.S.C. Sec. 1988 and under the common fund/common benefit doctrine. Keith, 501 F.Supp., 408-10. The order granting the award provided in part:
 
 
 7
 If the services of counsel are further required at the trial or appellate level to enforce the terms of the Final Consent Decree, including provisions regarding payment of attorneys' fees, the court reserves jurisdiction to order an additional award.
 
 
 8
 Keith, 501 F.Supp. at 415.
 
 
 9
 As implementation of the decree began in 1980, the parties recognized a need to modify it. Following negotiations, the district court in 1982 approved an amended consent decree. On July 28, 1982 the Center made application for supplemental attorney fees and expenses for the period between 1980 and 1982. In an unpublished order dated November 29, 1982, the district court awarded the Center an additional $292,939.89 for its representation of the plaintiffs in negotiations leading to the amended consent decree and for work monitoring and assisting in the decree's implementation. This order provided in part:
 
 
 10
 In determining the number of hours for which plaintiffs' counsel are entitled to compensation, this Court has considered the time and labor reasonably required of and expended by counsel in preserving the substantial benefits of the original Consent Decree and in monitoring its proper implementation....
 
 
 11
 Caltrans objected to the amount of the fee award. On December 10, 1982, it moved to vacate the award and sought reconsideration. The parties negotiated a settlement. They stipulated to a reduction of the award from $292,939.89 to $210,000 and waived any right to appeal from the stipulated award. An order was entered reducing the award to the stipulated amount.
 
 
 12
 Construction of the freeway and relocation of displaced residents began after the amended decree was entered. On November 21, 1984 the Center again applied for supplemental attorney fees. This application was for services rendered between 1982 and 1984. Caltrans opposed this request. It argued the application for fees was "novel" and presented a case of "first impression." The district court disagreed. The court stated that it had "reserved jurisdiction to award supplemental attorneys' fees" in its initial order filed March 31, 1980, and noted that
 
 
 13
 On November 29, 1982 this court awarded plaintiff's counsel [the Center] a supplemental award of attorneys' fees. Plaintiffs' counsel's work during the present application period is similar to work previously found to be compensable. This application for fees is also compensable pursuant to this court's continuing jurisdiction to award supplemental attorneys' fees. A supplemental award of attorneys' fees is appropriate in this case pursuant to 42 U.S.C. Sec. 1988 and the common benefit/substantial benefit doctrine.
 
 
 14
 Keith, 643 F.Supp. at 41 (citation omitted).
 
 
 15
 The district court scrutinized the hours and rates claimed by the Center and reduced the Center's request by almost twenty percent, from $496,100 to $399,415. Expenses of $7,985 were allowed, making a total award of $407,400 for attorney fees and costs for the 1982-84 period.[1] It is from this fee award that Caltrans appeals.[2]STANDARD OF REVIEW
 
 
 16
 Attorney fee awards under 42 U.S.C. Sec. 1988 are reviewed for abuse of discretion. Hensley v. Eckerhart, 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983). This standard applies both to the district court's decision to award fees and to its determination of the amount of fees. Chalmers v. City of Los Angeles, 796 F.2d 1205, 1210 (9th Cir.1986), amended, 808 F.2d 1373 (9th Cir.1987). "However, any elements of legal analysis and statutory interpretation which figure in the district court's decision are reviewable de novo." Hall v. Bolger, 768 F.2d 1148, 1150 (9th Cir.1985) (citation omitted). Such legal analysis would include interpretation of the consent decree, Keith v. Volpe, 784 F.2d 1457, 1461 (9th Cir.1986), and the legal requirements for awarding fees under section 1988.
 
 DISCUSSION
 
 17
 I. Caltrans' Eleventh Amendment Immunity Contention
 
 
 18
 The Supreme Court has held that by enacting the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. Sec. 1988, Congress exercised its enforcement power under section 5 of the fourteenth amendment, U.S. Const. amend. XIV, Sec. 5, to remove state eleventh amendment immunity from section 1988 attorney fee awards. Maher v. Gagne, 448 U.S. 122, 132, 100 S.Ct. 2570, 2576, 65 L.Ed.2d 653 (1980); Hutto v. Finney, 437 U.S. 678, 693-94, 98 S.Ct. 2565, 2574-75, 57 L.Ed.2d 522 (1978). Following these decisions, we have stated:
 
 
 19
 In Hutto ... the Supreme Court held that the Eleventh Amendment does not bar an attorney's fee award against a state under 42 U.S.C. Sec. 1988. In particular, the Court concluded that in enacting section 1988, Congress intended to invoke its enforcement power under section 5 of the Fourteenth Amendment to remove the states' protection under the Eleventh Amendment.
 
 
 20
 Spain v. Mountanos, 690 F.2d 742, 744 (9th Cir.1982) (citing Hutto and Maher ).
 
 
 21
 Caltrans argues that the eleventh amendment precludes the district court's October 22, 1985 order awarding supplemental attorney fees and costs to the Center. Caltrans contends the supplemental nature of the fee award distinguishes it from the earlier awards. It contends that if this third award of attorney fees for the 1982-84 period is allowed to stand, California will be obliged to make perpetual attorney fee payments for the benefit of the Center, an obligation to which it never agreed and one from which it is protected by the eleventh amendment. Citing Maher, 448 U.S. 122, 100 S.Ct. at 2571, Caltrans asserts that the eleventh amendment bars supplemental attorney fee awards against a state made after entry of a consent decree where there is no consent to pay additional fees and no violation of the decree.
 
 
 22
 Maher does not support Caltrans' eleventh amendment argument. In Maher, the Supreme Court held that the eleventh amendment does not bar a federal court from awarding attorney fees against a state under section 1988 in a case involving a wholly statutory, non-civil rights claim which is pendent to a "substantial" constitutional claim. 448 U.S. at 132, 400 S.Ct. at 2576. As in the present litigation, the dispute in Maher was settled and a consent decree was entered without any determination that the plaintiff's constitutional rights had been violated. In rejecting the contention that attorney fees could be awarded under section 1988 only for constitutional violations, the Court in Maher commented that "the constitutional issues remained in the case until the entire dispute was settled by entry of a consent decree." 448 U.S. at 131, 100 S.Ct. at 2575. Caltrans seizes upon this comment to argue that once a case involving constitutional issues is finally settled by entry of a consent decree, all constitutional disputes cease to exist and their absence precludes any further award of attorney fees under section 1988, except for awards to which the state has consented or which are made because of a violation of the decree.
 
 
 23
 We are not persuaded by this argument. First, Maher did not hold that the entry of a final consent decree would bar an award of attorney fees for services rendered after entry of the decree. That question was not before the Court in Maher. Second, the entry of the consent decree in the present case did not purport to finally settle all of the disputes which might arise between the parties. On the contrary, as the district court stated in its order from which this appeal is taken:
 
 
 24
 The Decree itself is more like a working constitution than a detailed blueprint. All problems could not have been reasonably anticipated at the time the Decree was drafted and approved. Cooperation between the parties was always viewed as an essential element in the creation, approval and administration of this Decree that commits resources and people to an estimated fifteen-year course of action.
 
 Keith, 643 F.Supp. at 39.[3]
 
 25
 We hold that the supplemental fee award is not barred by the eleventh amendment.
 
 II. Attorney Fees for Monitoring Activities
 
 26
 Caltrans argues that even if the eleventh amendment does not shield it from the supplemental fee award, the award is nonetheless improper because (a) the plaintiffs were not "prevailing parties" in matters for which the Center was awarded supplemental fees; (b) a finding of contempt or obstruction of the consent decree (neither of which is present in this case) is a prerequisite to such an award; (c) the existence of other monitoring entities created by the consent decree precluded an attorney fee award to the Center for post-judgment monitoring services; and (d) the district court limited its jurisdiction to award supplemental fees to matters involving "enforcement."
 
 
 27
 A. Does the Section 1988 "Prevailing Party" Requirement Bar Attorney Fees for Monitoring Activities?
 
 
 28
 The statutory basis for the supplemental fee award to the Center is the Civil Law Rights Attorney's Fees Award Act of 1976, 42 U.S.C. Sec. 1988. The language of section 1988 permits an award of attorney fees to "the prevailing party." 42 U.S.C. Sec. 1988. The plaintiffs were prevailing parties in the underlying action which resulted in entry of the consent decree in 1980 and its amendment in 1982. Caltrans contends, however, that the plaintiffs are not entitled to a supplemental attorney fee award for the Center's work monitoring the consent decree during the 1982-84 period, except where the Center's services involved court proceedings in which the plaintiffs prevailed.
 
 We have stated that:
 
 29
 The history of the [Civil Rights Attorney's Fees Award] Act [42 U.S.C. Sec. 1988], makes clear Congress' intent that a plaintiff need not obtain formal relief in order to recover fees.... A party who "vindicates his rights through a consent judgment ..." may be eligible.
 
 
 30
 American Constitutional Party v. Munro, 650 F.2d 184, 187 (9th Cir.1981) (citations omitted) (footnotes omitted); see also Northcross v. Board of Education of Memphis City Schools, 611 F.2d 624, 636 (6th Cir.1979), cert. denied, 447 U.S. 911, 100 S.Ct. 2999, 64 L.Ed.2d 862 (1980) ("the notion of 'prevailing party' is to be interpreted in a practical, not formal, manner.").
 
 The Supreme Court has noted:
 
 31
 Several courts have held that, in the context of the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. Sec. 1988, post-judgment monitoring of a consent decree is a compensable activity for which counsel is entitled to a reasonable fee. See, e.g., Garrity v. Sununu, 752 F.2d 727, 738-739 (CA1 1984); Bond v. Stanton, 630 F.2d 1231, 1233 (CA7 1980); Miller v. Carson, 628 F.2d 346, 348 (CA5 1980); Northcross v. Board of Education of Memphis City Schools, 611 F.2d 624, 637 (CA6 1979), cert. denied, 447 U.S. 911, 100 S.Ct. 2999, 64 L.Ed.2d 862 (1980).
 
 
 32
 Pennsylvania v. Delaware Valley Citizens' Council, --- U.S. ----, 106 S.Ct. 3088, 3095, 92 L.Ed.2d 439 (1986) (awarding attorney fees under the Clean Air Act, 42 U.S.C. Secs. 7401-7642, for post-judgment monitoring of a consent decree).
 
 
 33
 The First Circuit has stated that attorney services "necessary for reasonable monitoring of a consent decree" are compensable under section 1988. Garrity v. Sununu, 752 F.2d 727, 738 (1st Cir.1984); see also Northcross, 611 F.2d at 637 ("Services devoted to reasonable monitoring of the court's decree, both to insure full compliance and to ensure that the plan is indeed working ... are compensable services."). The district court in Garrity found that the services in question "were rendered when disputes arose between counsel for the parties with reference to certain budgetary, environmental, and staffing matters detailed in this Court's prior Order of Implementation" and that the services were "reasonable and necessary." 752 F.2d at 738. The First Circuit in Garrity stated that the district court "was entitled to believe that relief would occur more speedily and reliably if the monitoring referred to occurred, and that this was a necessary aspect of plaintiffs' 'prevailing' in the case. We find no abuse of discretion in that part of the award." Id. at 738-39.
 
 Here, the district court found that
 
 34
 Among the activities in which plaintiffs' counsel, the Center for Law in the Public Interest ("the Center"), have productively been involved are:
 
 
 35
 --Minority Business Enterprise/Female Business Enterprise certificate process: filing motion followed by informal discovery which resulted in significant changes to the Caltrans certification program.
 
 
 36
 --Contract award process: Center mediation of CFAAC and Caltrans disputes related to awarding to lowest "responsive bidder" and process used for withdrawal of bids.
 
 
 37
 --Contract compliance: actions taken to implement Decree by ensuring that minority and women contractor goals are met.
 
 
 38
 --Opinions interpreting the Decree: numerous written requests from entities for plaintiffs' written opinion on various aspects of the Decree's interpretation where there existed either uncertainty or differing interpretations.
 
 
 39
 --Corridor Advocate, scope of authority regarding appraisals: motion filed, argued and order issued requiring Caltrans to find the Advocate's appraisal review program.
 
 
 40
 --Motion to enjoin state court proceedings that threatened to delay awarding of housing contracts: motion filed, argued and order issued enjoining state court proceedings.
 
 
 41
 --Watts Labor Community Action Committee ("WLCAC"): responding to court requests to develop a method for WLCAC participation in the housing program in the Watts area.
 
 
 42
 --Tenant relocation issue: assisting Advocate's Office in resolving disputes between Advocate's Office and Caltrans regarding orderly removal of remaining corridor residents.
 
 
 43
 --Housing priorities for displacees: mediating disputes between the Advocate's Office and Caltrans to ensure the preservation of priority for displacees who are forced out prior to availability of housing.
 
 
 44
 --Wilco Dump: responding to CFAAC's concerns regarding problems related to this major contract.
 
 
 45
 --Budget of Decree entities: review and adjustment of budget procedures, as contemplated by the Decree.
 
 
 46
 --Coordination meetings: conducting numerous meeting of all parties and entities per court's request to resolve outstanding points in dispute among parties and entities; drafting, circulating and filing minutes with the court, fully identifying for the court all issues discussed, resolved, and left unresolved.
 
 
 47
 --Decree amendments: special meetings of all parties and entities to consider various proposed amendment to the Decree to clarify points in dispute.
 
 
 48
 --Status conferences: preparation of quarterly reports for court's Quarterly Conference on status of project.
 
 Keith, 643 F.Supp. at 40-41.[4]
 
 49
 As in Garrity, the district court here "was entitled to believe that relief [for the plaintiffs under the consent decree] would occur more speedily and reliably" if the Center engaged in these monitoring activities, and this post-judgment monitoring by the Center was, therefore, "a necessary aspect of plaintiffs' 'prevailing' in the case." See Garrity, 752 F.2d at 738-39. Interpreting the notion of "prevailing party" in a practical, not formal, manner, we conclude that the plaintiffs satisfied the prevailing party requirement of 42 U.S.C. Sec. 1988. See Northcross, 611 F.2d at 636.
 
 
 50
 B. Are Contempt Findings a Prerequisite to Section 1988 Awards for Monitoring?
 
 
 51
 Although some courts have awarded attorney fees under section 1988 for post-judgment monitoring in situations where defendants either violated the terms of a consent decree or obstructed its implementation, see, e.g., Pennsylvania, 106 S.Ct. 3088; Northcross, 611 F.2d 624, other courts have awarded attorney fees under section 1988 for post-judgment monitoring where contempt motions "never ripen[ed] into courtroom activity," see Miller v. Carson, 628 F.2d 346, 348 (5th Cir.1980), or where no contempt motions were brought and no findings of obstruction were made, see, e.g., Brewster v. Dukakis, 786 F.2d 16 (1st Cir.1986); Garrity, 752 F.2d 727. Moreover, in cases where fees have been awarded against defendants who violated or obstructed a decree, it was not the violation or obstruction which justified the award.
 
 
 52
 We agree with the First Circuit that a finding of contempt or obstruction is not a prerequisite for a section 1988 fee award for post-judgment monitoring activities. Brewster, 786 F.2d at 19; Garrity, 752 F.2d at 739. Sound public policy reasons support this conclusion. As the First Circuit noted in Garrity, "[w]e do not think that extreme tension and animosity are pre-conditions to a fee award of this sort." 752 F.2d at 738. Forcing the parties to take up positions on the battlefield of litigation as a condition precedent to obtaining an attorney fee award is antithetical to the desired goal of amicable implementation of a consent decree.
 
 
 53
 We hold that a finding of contempt or obstruction of implementation is not a prerequisite to an award of attorney fees for reasonable post-judgment monitoring of a consent decree.
 
 
 54
 C. Does the Existence of Separate Monitoring Entities Bar the Fee Award?
 
 
 55
 The Century Freeway Affirmative Action Committee (CFAAC) and the Office of the Corridor Advocate (Advocate), were entities created by the consent decree, and were charged with monitoring responsibilities. Caltrans contends that the existence of these entities precludes an attorney fee award to the Center for its monitoring activities, and, in any event, the monitoring activities for which the Center was awarded supplemental fees, it argues, were duplicative of activities which were performed by the CFAAC and the Advocate.
 
 
 56
 The question whether the existence of separate, decree-created monitoring entities will preclude an award of attorney fees for monitoring services performed by a party's legal counsel is a question of first impression in this circuit. The First Circuit, however, has addressed a similar question. See Brewster, 786 F.2d 16. In Brewster, a consent decree created a monitoring entity and plaintiffs' attorneys claimed fees for additional monitoring services. The Brewster court rejected the defendants' argument that the presence of a monitoring entity presumptively precluded an attorney fee award to plaintiffs' counsel for time spent in routine monitoring. 786 F.2d at 18-19. It held that routine monitoring by plaintiffs' counsel was compensable where it did not duplicate the court-appointed monitor's activities.[5] Id.
 
 
 57
 Here, the district court considered the duties and responsibilities of the CFAAC and the Advocate and concluded:
 
 
 58
 The work performed by the Center in connection with CFAAC and the Advocate as described in the time records cannot generally be characterized as a duplication or usurpation of responsibilities completely delegated to CFAAC or the Advocate. The extensive supporting documentation to plaintiffs' fee application establishes how much time was spent by each attorney on what CFAAC-related and Advocate-related matters.
 
 
 59
 Keith, 643 F.Supp. at 41-42.
 
 
 60
 We conclude that the existence of the CFAAC and the Advocate did not preclude an award of attorney fees to the Center for services which the district court found were not duplicative of the services rendered by the decree-created monitoring entities.
 
 
 61
 D. Did the District Court Limit Its Power to Award Fees by the Language of Its Reservation of Jurisdiction?
 
 
 62
 In its initial fee award, the district court reserved jurisdiction to make additional awards of attorney fees:
 
 
 63
 If the services of counsel are further required at the trial or appellate level to enforce the terms of the Final Consent Decree, including provisions regarding payment of attorneys' fees, the court reserves jurisdiction to order an additional award.
 
 
 64
 Keith, 501 F.Supp. at 415.
 
 
 65
 The Center's services were not required at the trial or appellate level to "enforce" the decree. Therefore, Caltrans argues, according to the district court's initial fee order, the Center should not have been awarded supplemental monitoring fees.
 
 
 66
 The district court did not characterize its order in the limited fashion Caltrans suggests. In the October 22, 1985 supplemental fee order which Caltrans now appeals, the district court construed its initial March 31, 1980 fee order to permit a supplemental attorney fee award. The district court stated:
 
 
 67
 This court reserved jurisdiction to award supplemental attorneys' fees in its Memorandum and Order of March 31, 1980. 501 F.Supp. at 415. On November 29, 1982, this court awarded plaintiffs' counsel a supplemental award of attorneys' fees. Plaintiffs' counsel's work during the present application period is similar to work previously found to be compensable. This application for fees is also compensable pursuant to this court's continuing jurisdiction to award supplemental attorneys' fees.
 
 
 68
 Keith, 643 F.Supp. at 41.
 
 
 69
 We agree with the district court's interpretation of its reservation of jurisdiction. The district court's authority to award supplemental fees for post-judgment monitoring services was not limited by the language of its reservation of jurisdiction.
 
 III. The Amount of the Fee Award
 
 70
 We discussed the proper procedure for computing the amount of an attorney fee award in Chalmers v. City of Los Angeles, 796 F.2d 1205, 1213 (9th Cir.1986) (attorney fee award reversed as abuse of discretion where district court order "failed to explain the reasons for its award or the manner in which it arrived at the award"), amended, 808 F.2d 1373 (9th Cir.1987). In Chalmers, we stated:
 
 
 71
 The initial determination of reasonable attorney's fees is calculated by multiplying the number of hours reasonably expended ... by a reasonable hourly rate. [Hensley v. Eckerhart, 461 U.S. 424,] 433 [103 S.Ct. 1933, 1939, 76 L.Ed.2d 40] [ (1983) ] ... In determining reasonable hours, counsel bears the burden of submitting detailed time records justifying the hours claimed to have been expended. Id. ... Next, the district court must determine a reasonable hourly rate considering the experience, skill, and reputation of the attorney requesting fees.... What remains important is that the district court articulate with sufficient clarity the manner in which it makes its determination of a reasonable hourly rate and the number of hours which should reasonably be compensated. Rutherford v. Pitchess, 713 F.2d 1416, 1420 (9th Cir.1983) (citing Hensley, 461 U.S. at 437 [103 S.Ct. at 1941) ]....
 
 
 72
 Chalmers, 796 F.2d at 1210-11.
 
 
 73
 Caltrans objects to the amount of fees awarded to the Center. It contends that the documentation submitted by the Center was inadequate because it consisted of weekly time records rather than daily time records, and because some of the descriptions of work performed were vague. Caltrans does not claim, however, that there is any inconsistency between the daily and weekly time records or that the district court was unable to determine which hours were properly compensable from the records before it. Caltrans also challenges the number of hours claimed by the Center because the Center did not specify which hours it had excluded from its fee request. Finally, citing Ramos v. Lamm, 713 F.2d 546, 555 (10th Cir.1983), Caltrans contends that the Center did not exercise proper billing judgment, but instead claimed hours for duplicative work, background familiarization, and clerical tasks which would not have been billed to a client and therefore should not be billed to Caltrans.
 
 
 74
 The district court "considered the weekly time records of all attorneys, law clerks, and paralegals, the chronological summary of activities and two-volume appendix of relevant documents, and the declaration setting forth the method of preparing the time records," and concluded that the "comprehensive record ... supports the finding that most of the hours claimed were reasonably spent and were related to the enforcement and implementation of the Decree." Keith, 643 F.Supp. at 43. The district court then proceeded to deduct hours spent on activities which it did not deem to be reasonably compensable. By calculating the number of hours reasonably expended by the Center and the reasonable hourly rate for the work done, and by clearly articulating the manner in which it made its determination, the district court satisfied the requirements set forth in Chalmers.
 
 
 75
 Caltrans also makes numerous specific challenges to individual activities which the district court considered to be appropriate in monitoring the consent decree. Although we have independently reviewed the record, we note that "the district court is in the best position to determine in the first instance the number of hours reasonably expended...." Chalmers, 796 F.2d at 1211. The district court had "the benefit of the adversary process" and was able to develop "a sense of the extent to which the claim for services was reasonable." Compare Brewster, 786 F.2d at 18. It extensively analyzed the fee application and disallowed almost twenty percent of the fees claimed. We find no abuse of discretion by the district court in setting the amount of the fee award.[6]
 
 CONCLUSION
 
 76
 The district court did not abuse its discretion in making the supplemental fee award to the Center for services rendered in monitoring the implementation of the consent decree. The eleventh amendment does not bar such an award under section 1988. The prevailing party requirement for an attorney fee award under section 1988 is satisfied here. A finding of violation or obstruction of the decree is not a prerequisite to such an award. The presence of monitoring entities does not prevent an award of attorney fees for non-duplicative activities. The district court's reservation of jurisdiction to award attorney fees in its March 31, 1980 order awarding attorney fees did not limit its power to make supplemental fee awards. Finally, the district court properly determined the amount of the fee award by determining those hours which were reasonably compensable, excluding those hours which were not, and multiplying the resulting reasonable number of hours by reasonable hourly rates. The award of attorney fees by the district court is AFFIRMED.
 
 
 77
 SNEED, Circuit Judge (concurring in part and concurring in the judgment).
 
 
 78
 I concur in all portions of Judge Thompson's opinion except with respect to I.C. as to which I concur only in the result.
 
 
 79
 I agree that the mere existence of a separate monitoring entity does not automatically bar any fee award to the Center for monitoring activities. I also agree that the finding by the district court that the work of the Center was neither a duplication nor usurpation of the work of CFAAC and the Advocate did not constitute an abuse of discretion.
 
 
 80
 My concern with part I.C. of the opinion is that it can be construed to approve routine monitoring by the Center of the day-to-day activities of CFAAC and the Advocate. In one sense the monitoring of Z by Y and of Y by X is not duplicative. Both X and Y have different objects of scrutiny. In another sense, however, it does duplicate effort. The ultimate object is to see that Z performs the assigned duty. My fear is that Judge Thompson's opinion will be understood as recognizing no duplication in the X Y Z situation even when both X and Y monitor on a routine day by day, hour by hour, basis.
 
 
 81
 Certainly Brewster v. Dukakis, 786 F.2d 16 (1st Cir.1986) does not require such a conclusion. The Brewster court quite correctly rejected the proposition that plaintiff's attorneys should be compensated when the decree created a monitoring entity only "where a substantial issue arises as to the defendant's obligations under the decree and the work of plaintiffs' counsel yields a resolution more favorable to the class than the defendants were prepared to concede." Id. at 18. The First Circuit was, as it put it, "traumatized" by the prospect of applying such a standard. I share that view. However, Brewster did find that the work of plaintiff's counsel did not duplicate that of the court appointed monitor, id. at 19 n. 8, and recognized the danger of a decree "institutionalizing" the plaintiff's attorney as well as the monitor. Id. at 18.
 
 
 82
 I doubt not that the First Circuit would recognize that to pay X to monitor Y who monitors Z would "institutionalize" X when both X and Y were checking up on a daily, hour by hour, basis. Such "institutionalization" recedes as X's work becomes less constant and more particularized. The point at which it escapes the brand of duplication must be left to the judgment of the district court.
 
 
 83
 Brewster is quite consistent with this conclusion. I write, to repeat, only because I am not sure that part I.C. of Judge Thompson's opinion is equally consistent. It too much blesses the exercise by the trial court of its discretion without indicating by what standard such exercise should be guided.
 
 
 
 [1]
 The district court stated that fees and costs were awarded pursuant to the court's reservation of jurisdiction to award fees, the provisions of 42 U.S.C. Sec. 1988, and the common fund/common benefit doctrine. Plaintiffs concede the common fund/common benefit doctrine does not apply to this case
 
 
 [2]
 The Center has since applied to the district court, and has been awarded, attorney fees of $179,320.00 and expenses of $3,535.70 for the period from November 1984 to February 1986. Keith v. Volpe, 644 F.Supp. 1312 (C.D.Cal.1986). In its published order the district court stated "[i]t should now be apparent that the court believes the plaintiffs play a necessary role in monitoring the decree. The court will continue to award fees for time reasonably spent in fulfilling this essential function." 644 F.Supp. at 1315. Caltrans has appealed from this 1984-86 fee award. That appeal is not now before us
 
 
 [3]
 Caltrans also cites Washington v. Penwell, 700 F.2d 570 (9th Cir.1983), in support of its argument that once the consent decree was entered the eleventh amendment precluded any award of attorney fees for services rendered thereafter. Washington is not on point. There we held that Oregon was not required to provide funding for a legal services program because state officials who had made that commitment were forbidden by state law from committing funds absent legislative approval, and because the eleventh amendment precluded the district court from ordering the state to fund a program not mandated by the Constitution or required by federal law. Id. at 574-75
 
 
 [4]
 We recognize that, in some sense, the Center was functioning not only as plaintiffs' counsel but also in a role similar to that of a court-appointed special master. The district court encouraged the parties to work out their differences among themselves to try to avoid expensive and time-consuming court resolution of disputes as the consent decree was implemented. The court expected the Center to mediate differences and achieve settlements. The problem with this procedure, however, is that it placed plaintiffs' counsel in a position that might have been more neutral than the plaintiffs' interests dictated. This dilemma could have been avoided by the appointment of a special master. Despite this concern, however, we believe that the district court was in the best position to decide whether to appoint a special master; we see no impropriety in the district court's decision not to do so
 
 
 [5]
 Caltrans argues that Brewster is distinguishable from the case now before us because the consent decree in Brewster bestowed various responsibilities on the parties and mandated active plaintiff involvement in resolution of outstanding issues. Although the consent decree in Brewster may have been more explicit in specifying areas of plaintiff involvement than the consent decree at issue here, we do not regard this distinction as determinative. As the district court in the present case stated: "Cooperation between the parties was always viewed as an essential element in the creation, approval and administration of this Decree...." Keith, 643 F.Supp. at 39 (emphasis added)
 
 
 [6]
 We note, however, the perplexing task which a district court faces when it is called upon to consider a fee request which spans a period of years. Inherent in such a procedure is the inability of the court to control, on a current basis, the amount of fees being incurred by one party at the expense of another. It appears the district court has now focused on this problem; it currently requires quarterly fee applications from the Center