**BULLFROG FILMS, INC., et al., Plaintiffs–Appellants,**

v.

**Charles Z. WICK, Director, United States Information Agency, et al., Defendants–Appellees.**

No. 89–55945.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 14, 1991.

Decided March 12, 1992.

David D. Cole, Center for Constitutional Rights, New York City, for plaintiffs-appellants.

Wendy M. Keats, Appellate Staff, U.S. Dept. of Justice, Washington, D.C., for defendants-appellees.

Before: BROWNING, FLETCHER, and POOLE, Circuit Judges.

FLETCHER, Circuit Judge:

Appellant Bullfrog Films, Inc. ("Bullfrog") appeals from the district court's order denying an award of attorney's fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. The district court held that the government's position was substantially justified. It further held that Bullfrog was not entitled to fees incurred on its post-judgment motions because those motions involved new substantive issues and were not part of the original action.

We affirm in part and reverse in part.

## BACKGROUND

This litigation began over five years ago when Bullfrog filed suit challenging the constitutionality of various regulations implemented by the United States Information Agency ("USIA"). These regulations, 22 C.F.R. §§ 502.6(a)(3), (b)(3) and (b)(5),[1] purported to implement the Beirut Agreement on the international exchange of audio/visual education material. The regulations attempted to define what films were properly characterized as "educational," and thus merited the issuance of a certificate by the USIA. With this certificate, the film distributor was eligible for a waiver of import duties by the country to which the film was being exported.

In the original action, Bullfrog challenged the facial validity, as well as the application to plaintiff's films, of sections 502.6(b)(3) and (b)(5). Section 502.(a)(3), which tracked the language of the Beirut Agreement, was only challenged in its application to Bullfrog's films. The court found the "as applied" challenge of section 502.6(a)(3) indistinguishable from a facial challenge and thus found it unnecessary to reach Bullfrog's "as applied" challenges. *Bullfrog Films, Inc. v. Wick,* 646 F.Supp. 492, 506–07 & n. 19, (C.D.Cal.1986). We affirmed this decision in *Bullfrog Films, Inc. v. Wick,* 847 F.2d 502 (9th Cir.1988).[2]

Subsequent to the district court's decision but before we issued our opinion, Bullfrog filed two motions to compel compliance with the district court's order "that the USIA reconsider the eligibility of [Bullfrog's films] for certification under the Bei-

1. Section 502.6(b)(3) stated:

   The Agency does not certify or authenticate materials which by special pleading attempt generally to influence opinion, conviction or policy (religious, economic or political propaganda), to espouse a cause, or conversely, when they seem to attack a particular persuasion. Visual and auditory materials intended for use only in denominational programs or other restricted organizational use in moral or religious education and which otherwise meet the criteria set forth under paragraph (a) or this section and paragraph (b)(5) of this section, may be determined eligible for certification in the judgment of the Agency.

   Section 502.6(b)(5) provided:

   The Agency does not regard as augmenting international understanding or good will and cannot certify or authenticate any material which may lend itself to misinterpretation, or misrepresentation of the United States or other countries, their peoples or institutions, or which appear to have as their purpose or effect to attack or discredit economic, religious, or political views or practice.

2. The district court and appellate court decisions invalidating this first set of USIA regulations will be referred to as *"Bullfrog I."* In *Bullfrog I,* the panel found the regulations on their face violated the first amendment and "provided USIA officials with a virtual license to engage in censorship." 847 F.2d at 514.

rut Agreement under standards consistent with the First and Fifth Amendments." The second motion also challenged the constitutionality of a second set of regulations the USIA had promulgated in response to the order. The district court also held these "interim regulations" to be unconstitutional, and ordered the USIA to again promulgate new regulations. The government appealed this order.[3]

After the government decided not to file a petition for a writ of certiorari in the Supreme Court for *Bullfrog I*, Bullfrog applied for attorney's fees under the EAJA. Finding that the motions raised new constitutional questions, the district court rejected Bullfrog's contention that its post-*Bullfrog I* motions should be considered part of that case. It further held that because the government's position was "substantially justified" under the EAJA, Bullfrog was not entitled to attorney's fees.

## STANDARD OF REVIEW

We review the district court's decision to deny attorney's fees under the EAJA for abuse of discretion. *Pierce v. Underwood*, 487 U.S. 552, 562, 108 S.Ct. 2541, 2548, 101 L.Ed.2d 490 (1988); *Bay Area Peace Navy v. United States*, 914 F.2d 1224, 1230 (9th Cir.1990). "The district court abuses its discretion when its 'decision is based on an erroneous conclusion of law or when the record contains no evidence on which [it] rationally could have based that decision.'" *Kali v. Bowen*, 854 F.2d 329, 331 (9th Cir. 1988) (quoting *Petition of Hill*, 775 F.2d 1037, 1040 (9th Cir.1985)).

## DISCUSSION

I. "Substantial Justification" of the Government's Position

The EAJA provides, in relevant part, that the district court shall award fees

to a prevailing party other than the United States ... incurred by that party in any civil action ... brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A). The Supreme Court has held that "substantially" in this context does not mean "'justified to a high degree,' but rather 'justified in the substance or in the main'—that is, justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. at 565, 108 S.Ct. at 2550. This standard is the same as the "reasonable basis both in law and fact" formulation previously adopted by our circuit as well as the majority of other circuits. *Id.*

■ "The government bears the burden of showing that its position was substantially justified in law and in fact." *Oregon Environmental Council v. Kunzman*, 817 F.2d 484, 498 (9th Cir.1987). The district court is to take into account the totality of the circumstances in deciding whether the government's position is substantially justified. *Id.*

The district court set forth three reasons why it viewed the government's position as substantially justified. We consider each in turn.

A. Analogy of the government's position to defense of a statute

■ The district court found the government's position to be substantially justified because § 502.6(a)(3) repeats the Beirut Agreement *verbatim;* thus, it reasoned, this case presented a "situation very similar to the defense of a statute." However, Bullfrog challenged only sections 502.-6(b)(3) and (b)(5) as facially unconstitutional; it challenged section 502.6(a)(3) only as

**3.** The district court's decision and the government's appeal regarding the constitutionality of the second set of USIA regulations will be referred to as *"Bullfrog II."*

Subsequent to the government's appeal in Bullfrog II, Congress adopted legislation which prohibits denial of an educational certificate to

films for content-based reasons such as those Bullfrog sought to preclude. Congress has thus effectively invalidated the second set of regulations Bullfrog challenged in *Bullfrog II. See* Foreign Relations Authorization Act of 1991 § 207, *reprinted at* 137 Cong.Rec. H7474 (daily ed. Oct. 3, 1991).

applied. The district court *sua sponte* found section 502.6(a)(3) unconstitutional on its face. Sections 502.6(b)(3) and (b)(5) represent only the USIA's efforts to interpret the language of the treaty, and thus are not entitled to the deference the district court accorded them.

Moreover, even as to section 502.6(a)(3), the district court's rationale is flawed. In a case involving the government's defense of a statute, we have refused to hold that "the Justice Department's decision to defend the constitutionality of a statute is reasonable regardless of whether the statute itself might reasonably be thought to be constitutional." *League of Women Voters of California v. F.C.C.*, 798 F.2d 1255, 1259 (9th Cir.1986). It was simply not enough to state that because the regulation tracked the language of the treaty, the government's defense of the regulation was valid.[4]

## B. Years without challenge

■ The district court also found substantial justification because "these regulations had been in effect for many years ... and neither the Treaty nor the regulations had ever been challenged in court." This factor is not, as Bullfrog contends, irrelevant to the substantial justification analysis, but, particularly in this case, we cannot give it the weight the district court appears to have accorded it.

"The EAJA ... does not suggest that an agency's position is substantially justified because its position goes years without challenge." *Andrews v. Bowen*, 837 F.2d 875, 879 (9th Cir.1988). "A string of losses" or "a string of successes" in the government's record on defense of a statute can be "indicative." *Pierce v. Underwood*, 487 U.S. at 569, 108 S.Ct. at 2552. However, an absence of prior decisions could have many meanings. Bullfrog correctly argues that where, as here, the challenged regulations are clearly invalid, the first suit attacking them will probably be the last. Moreover, were we to adopt the district court's view, we would make it

more difficult for even plaintiffs challenging obviously unconstitutional regulations to recover fees where the regulations are such that the range of potential plaintiffs is small or a challenge would be brought only in unique circumstances. Because it is impossible to make any meaningful interpretation of the fact that no party had previously come forth to challenge the facially invalid regulations at issue in this case, we cannot accord this factor the weight the district court gave it.

## C. Relationship to foreign policy

■ Finally, the court rejected Bullfrog's motion because "the case involved the relatively uncharted area of the application of the First Amendment and its relationship to the conduct of foreign policy." Our opinion in *Bullfrog I*, and, indeed, the district court's own decision in that case contradict that statement.

Carrying out a straightforward analysis under well-established First Amendment precedent, we found that the regulations at issue "plainly interfere[d]" with Bullfrog's First Amendment rights. *Bullfrog Films v. Wick*, 847 F.2d at 511. We then found that the government had shown no compelling state interest to justify the content-based discrimination the regulations created. *Id.*, 847 F.2d at 512. Previously, the district court itself had stated that "there can be no question that, in the absence of some overriding governmental interest such as national security, the First Amendment protects communications with foreign audiences to the same extent as communications within our borders," *Bullfrog Films v. Wick*, 646 F.Supp. at 502, and had rejected the foreign policy interests the government asserted to justify the regulations. *Id.*, 646 F.Supp. at 504. Neither our decision nor the district court's suggests that this legal terrain was "relatively uncharted."

Having rejected two of the factors considered by the district court in its decision, and having strongly questioned the third, we find that the district court abused its

---

4. We need not decide whether the district court was correct in finding the situation before it

"very similar to the defense of a statute."

discretion in holding that Bullfrog was not entitled to attorneys' fees because the government's position was substantially justified.

## II. Fees for Post–Judgment Proceedings

■ The district court held that Bullfrog, if entitled to fees at all, should receive fees only for "the initial judgment and the proceedings leading up to it"; Bullfrog's post-judgment motions, it ruled, "should be treated as a separate action for purposes of the prevailing party/final judgment rule." Bullfrog argues that under *Pennsylvania v. Delaware Valley Citizens' Council*, 478 U.S. 546, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986) (*"Delaware Valley"*) and *Keith v. Volpe*, 833 F.2d 850 (9th Cir. 1987) (*"Keith"*), the district court erred in severing post-judgment proceedings required to enforce the district court's order from the initial proceedings required to obtain the order.

*Delaware Valley* and *Keith* discuss attorney fee awards under the Civil Rights Attorney's Fees Awards Act of 1976, which provides that in certain civil rights actions "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988.[5]

In *Delaware Valley*, the plaintiff first obtained relief in the form of a consent decree, and then participated in administrative proceedings and substantial further litigation to protect that relief. The Supreme Court held that "participation in these administrative proceedings was crucial to the vindication of Delaware Valley's rights under the consent decree and [found] that compensation for these activities was entirely proper and well within the 'zone of discretion' afforded the District Court." *Delaware Valley*, 478 U.S. at 561, 106 S.Ct. at 3096 (citation omitted). In *Keith*, plaintiffs also applied for fees for monitoring compliance with a consent decree. We held that "the district court here 'was entitled to believe that relief [for the plaintiffs under

the consent decree] would occur more speedily and reliably' if the [plaintiffs] engaged in these monitoring activities, and this post-judgment monitoring by the [plaintiffs] was, therefore, 'a necessary aspect of plaintiffs' "prevailing" in the case.'" *Keith*, 833 F.2d at 857, quoting *Garrity v. Sununu*, 752 F.2d 727, 738–39 (1st Cir.1984).

Both these cases hold that it was within the district court's discretion, under CRAFA, to award attorney's fees for post-judgment proceedings. However, neither holds that the district court *must* make such an award. Thus, we cannot say that the district court abused its discretion in refusing, for the purposes of its fee award decision, to consider post-judgment proceedings together with proceedings necessary to obtain the judgment.

AFFIRMED IN PART, REVERSED IN PART.

---

5. We have held that "'we cannot distinguish [CRAFA] from the [EAJA] for the purposes of defining "prevailing party."'" *United States v.*

*Buel*, 765 F.2d 766, 767 (9th Cir.1985) (quoting *NLRB v. Doral Building Serv.*, 680 F.2d 647, 647 (9th Cir.1982)).