**BULLFROG FILMS, INC., et al., Plaintiffs–Appellees,**

v.

**Charles Z. WICK, Director, United States Information Agency, et al., Defendants–Appellants.**

**No. 88–6310.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 17, 1989.

Decided March 12, 1992.

David D. Cole, Center for Constitutional Rights, New York City, for plaintiffs-appellees.

Wendy M. Keats, Appellate Staff, U.S. Dept. of Justice, Washington, D.C., for defendants-appellants.

Before: BROWNING, FLETCHER and POOLE, Circuit Judges.

Because of the passage of new legislation, we dismiss the appeal and remand this case to the district court.

## I

This litigation began on December 5, 1985 when the plaintiffs—independent filmmakers, film production and distribution companies and a membership association—filed suit in the district court. The plaintiffs (hereinafter "Bullfrog") alleged the United States Information Agency (USIA) violated their constitutional rights by refusing to certify their films as "educational, scientific or cultural" under the Beirut Agreement.[1]

The district court ruled the USIA regulations used to implement the Beirut Agreement were facially unconstitutional, violating the First and Fifth Amendments, and ordered the USIA to reconsider Bullfrog's films under regulations consistent with the Constitution. *Bullfrog Films, Inc. v. Wick*, 646 F.Supp. 492 (C.D.Cal.1986). The USIA appealed, and we affirmed. *Bullfrog Films, Inc. v. Wick*, 847 F.2d 502 (9th Cir.1988).

The USIA promulgated new regulations on November 16, 1987. *See* 52 Fed.Reg. 43,753 (1987) (codified at 22 C.F.R. § 502.-6(a)(3) (1991)). Bullfrog objected to these interim regulations as suffering from many of the same constitutional infirmities as the original regulations. In an unpublished decision filed May 13, 1988, the district court ruled the interim regulations were facially unconstitutional. On September 9, 1988, the district court ordered the USIA to issue new regulations consistent with the Constitution within 60 days, and to grant provisional certification to Bullfrog's films, pending reconsideration under the new regulations. The USIA filed this appeal. On November 10, 1988, we granted the USIA's application for a stay of the district court's decision striking down the interim regulations.[2]

On October 28, 1991, the President signed into law the Foreign Relations Authorization Act, Fiscal Years 1992 and 1993, Pub.L. 102–138, 105 Stat. 647 (1991). Section 207 of the Act, 105 Stat. at 693–94 (to be codified at 19 U.S.C. § 2051), provides that the federal agency or agencies charged with implementing the Beirut Agreement (in other words, the USIA)

> may not consider visual or auditory material to fail to qualify as being of international educational character—
>
> (1) because it advocates a particular position or viewpoint, whether or not it presents or acknowledges opposing viewpoints;
>
> (2) because it might lend itself to misinterpretation, or to misrepresentation of the United States or other countries, or their people or institutions;
>
> (3) because it is not representative, authentic, or accurate or does not represent the current state of factual knowledge of a subject or aspect of a subject unless the material contains widespread and gross misstatements of fact;
>
> (4) because it does not augment international understanding and goodwill, unless its primary purpose or effect is not to instruct or inform through the development of a subject or an aspect of a subject and its content is not such as to maintain, increase or diffuse knowledge; or
>
> (5) because in the opinion of the agency the material is propaganda.

**1.** 17 U.S.T. 1578, T.I.A.S No. 6116, 197 U.N.T.S. 3, implemented by Pub.L. No. 89–634; 80 Stat. 879 (1966). For a description of the Beirut Agreement and the USIA's role in implementing it, see *Bullfrog Films, Inc. v. Wick*, 847 F.2d 502, 504–05 (9th Cir.1988). *See also* Nancy S. Robinson, *Silenced Screens: The Role of the United States Information Agency in Denying Export Certificates to American Films*, 17 N.Y.U. J. Int'l L. & Pol. 77 (1984); Scott L. Landsbaum, Note, *How to Censor Films Without Even Trying: The*

*Beirut Agreement and The Foreign Agents Registration Act*, 62 S.Cal.L.Rev. 685 (1989).

**2.** After the district court struck down the interim regulations, the USIA promulgated a third set of regulations. *See* 53 Fed.Reg. 45,079 (Nov. 8, 1988). However, because of the stay of the district court's decision, the USIA suspended the third set of regulations and resumed operating under the November 16, 1987 interim regulations. *See* 53 Fed.Reg. 47,674 (Nov. 25, 1988).

Such Federal agency or agencies may not label as propaganda any material that receives a certificate of international educational character under this section and the Agreement.

The evident intent of this new legislation is to bring the USIA's implementation of the Beirut Agreement into compliance with the Constitution. Section 207 is taken from the House version of the bill. The House Report accompanying the bill explains that Section 207 is intended

to ensure that USIA's certification of material as "education" is not tainted by attempts, based on political or ideological judgements, to inhibit the expression of opinions.

The Beirut Agreement is a treaty to which the United States is a party. It is designed to facilitate the international circulation of educational materials. The Agreement provides that material which is certified as "educational" by the country of its origin is exempt from Customs duties. Under USIA regulations purporting to implement this Agreement, however, the government has denied certification to, and thus inhibited the export of, U.S. films on the basis of disapproval of the ideas or opinions contained therein, regardless of their educational character. The executive branch has thus used these regulations to impose a significant disadvantage upon the expression of ideas or opinions with which it disagrees. Moreover, when prohibited by court order from denying educational certification for ideological reasons, the agency has granted certification, but has nevertheless attempted to stigmatize the material by labelling it "propaganda."

The amendment made by this section, to the statute implementing the U.S. obligations under the Beirut Agreement, would prohibit denial of certification on extraneous grounds, and would prevent labelling as "propaganda" material which is certified. It would thus ensure that those obligations are carried out in a manner that is consistent with the spirit of the Agreement and with the First Amendment to the Constitution of the United States.

H.R.Rep. No. 53, 102d Cong., 1st Sess. 65–66 (1991), *reprinted in* 1991 U.S.C.C.A.N. 384, 419–20. Similarly, the House Conference Report explains that Section 207 was adopted

to ensure that the United States implements the Beirut Agreement in conformity with its purpose and with the First Amendment to the Constitution of the United States. The provision is intended to ensure that government regulations do not frustrate the purpose of the Agreement by empowering U.S. Government officials to make subjective judgments about the political content or message of documentary films, and thereby impede their circulation abroad by denial of educational certification. Adoption of the provision is also designed to ensure that determinations by the U.S. Government of the educational character of documentary films are viewpoint-neutral.

H.R. Conf. Rep. No. 238, 102d Cong., 1st Sess. 126 (1991), *reprinted in* 1991 U.S.C.C.A.N. 384, 468.

## II

██ Bullfrog contends the USIA's appeal should be dismissed because the four parts of the interim regulations found unconstitutional by the district court have been supplanted by the new legislation. The USIA agrees the appeal has become moot as to these three parts of the interim regulations:

1. The district court held unconstitutional the USIA's practice of labeling certain materials as "propaganda," even though the materials had been awarded certificates. *See* 22 C.F.R. § 502.6(a) (1991) (unnumbered last paragraph) (authorizing this practice). The USIA concedes that because the new legislation provides the USIA "may not label as propaganda any material that receives a certificate," its appeal on this issue is moot.

2. The district court held unconstitutional 22 C.F.R. § 502.6(a)(3)(iii) (1991), pursuant to which material that presents a particular viewpoint could be denied certification unless it acknowledges the existence

of other viewpoints. The USIA concedes that because the new legislation prohibits it from denying certification to material that "advocates a particular position or viewpoint, whether or not it presents or acknowledges opposing viewpoints," its appeal on this issue is moot.

3. The district court held unconstitutional the portion of 22 C.F.R. § 502.-6(a)(3)(ii) (1991) pursuant to which material that presented a viewpoint could be denied certification if the facts upon which the viewpoint was based "do not represent the current state of factual knowledge of a subject or aspect of a subject, v[e]rifiable by generally accepted methods...." The USIA concedes that because the new legislation prohibits it from denying certification to material because "it is not representative, authentic, or accurate or does not represent the current state of factual knowledge of a subject or aspect or a subject," its appeal on this issue is moot.

Because the legislation has supplanted these three parts of the regulations, we dismiss the appeal on these issues as moot. We remand the case to the district court with instructions to vacate its judgments of May 13, 1988 and September 9, 1988 on these issues. *See United States v. Munsingwear, Inc.,* 340 U.S. 36, 39–41, 71 S.Ct. 104, 106–107, 95 L.Ed. 36 (1950).

## III

▪ The district court also held unconstitutional a fourth part of the regulations, 22 C.F.R. § 502.6(a)(3)(i) (1991), pursuant to which material could be denied certification unless its content "is presented in a primarily factual or demonstrative manner." The USIA contends the new legislation leaves this regulation intact and asks this court to review its constitutionality. Bullfrog disagrees with the USIA's interpretation of the statute and suggests this case be remanded to the district court for initial consideration of this issue. We agree with Bullfrog.

The statutory interpretation issue was not presented to the district court and has

not been briefed or argued by the parties.[3] We decline to issue an opinion on the constitutionality of a regulation that may have been supplanted by the statute. " 'Prior to reaching any constitutional questions, federal courts must consider nonconstitutional grounds for decision.' " *Jean v. Nelson,* 472 U.S. 846, 854, 105 S.Ct. 2992, 2997, 86 L.Ed.2d 664 (1985) (quoting *Gulf Oil Co. v. Bernard,* 452 U.S. 89, 99, 101 S.Ct. 2193, 2199, 68 L.Ed.2d 693 (1981)); *see also id.* (" '[i]f there is one doctrine more deeply rooted than any other in the process of constitutional adjudication, it is that we ought not to pass on questions of constitutionality ... unless such adjudication is unavoidable' ") (omission in original) (quoting *Spector Motor Service, Inc. v. McLaughlin,* 323 U.S. 101, 105, 65 S.Ct. 152, 154, 89 L.Ed. 101 (1944)).

Further, the district court held section 502.6(a)(3)(i) was unconstitutionally vague because it did not set boundaries on the discretion of the USIA. Since the new legislation sets forth criteria the USIA *may not* use in deciding whether material should be certificated, it limits the discretion of the USIA in applying any regulations. Even assuming 22 C.F.R. § 502.-6(a)(3)(i) is not overridden by the statute, the question of whether the regulation is unconstitutionally vague must be answered in light of the new legislation. It is not the same question that faced the district court, and the district court should have the first opportunity to rule on it.

In addition, we are mindful of congressional intent that the new legislation bring the implementation of the Beirut Agreement into compliance with the Constitution. Reconsideration of Bullfrog's films by the USIA in light of the new legislation may well make further litigation unnecessary. The USIA should be given a chance to proceed under the new statute, including, if it so chooses, to promulgate entirely new regulations.

## IV

We dismiss the appeal and remand the case to the district court. The district

---

**3.** In general, an issue must be raised below to be properly before this court on appeal. *See*

*International Union of Bricklayers v. Martin Jaska, Inc.,* 752 F.2d 1401, 1404 (9th Cir.1985).

court is instructed to vacate its judgments of May 13, 1988 and September 9, 1988 as to the three parts of the regulations discussed in part II of this order. On remand, the district court should enter an appropriate order requiring the USIA to reconsider any of Bullfrog's films denied certification and to grant provisional certification to the films pending reconsideration. The district court is free to consider new arguments as to the legality of the part of the regulations discussed in part III of this order, if the issue remains alive after reconsideration of the films by the USIA. The stay granted on November 10, 1988 is lifted as unnecessary.

Each side to bear its own costs on appeal.

REMANDED.