**BULLFROG FILMS, INC.,
et al., Plaintiffs,**

v.

**Henry E. CATTO, etc., et al., Defendants.**

**No. CV 85–7930 AWT.**

United States District Court,
C.D. California.

March 1, 1993.

David Cole, Michael Ratner, Morton Stavis, Center for Constitutional Rights, New York City, Dan Stormer, Ben Margolis, Hadsell & Stormer, Pasadena, CA, for plaintiffs.

**340**

Terree A. Bowers, U.S. Atty., Roger E. West, First Asst. U.S. Atty., Los Angeles, CA, Vincent M. Garvey, Deputy Director, Carol Federighi, U.S. Dept. of Justice, Civ. Div., Washington, DC, for defendants.

## MEMORANDUM AND ORDER ON MOTION FOR ATTORNEYS' FEES

TASHIMA, District Judge.

This is plaintiffs' renewed motion for attorneys' fees under the Equal Access to Justice Act, 28 U.S.C. § 2412 (EAJA). A short history of this long case is necessary to the disposition of the motion.

### BACKGROUND

This action was brought to challenge the constitutionality of the regulations promulgated by the United States Information Agency (USIA) to implement the Beirut Agreement, a treaty designed to facilitate the international distribution of educational films. 17 U.S.T. 1578, T.I.A.S. No. 6116. The court held the regulations to be facially unconstitutional. *Bullfrog Films, Inc. v. Wick,* 646 F.Supp. 492 (C.D.Cal.1986), *aff'd,* 847 F.2d 502 (9th Cir.1988) *(Bullfrog I ).* The USIA was ordered to issue new, constitutional regulations. New regulations were issued. 52 Fed.Reg. 43,753 (1987), *codified at* 22 C.F.R. § 502.6(a)(3) (1991). However, these also were challenged by plaintiffs in this action. In an unpublished decision issued May 13, 1988, the court held these regulations to be unconstitutional as well.

While the second appeal was pending, Congress enacted the Foreign Relations Authorization Act, Fiscal Years 1992 and 1993. Pub.L. 102–138, 105 Stat. 647 (1991). Section 207 of that Act (Section 207) set forth new statutory standards governing the implementation of the Beirut Agreement. 19 U.S.C. § 2051. Section 207 superseded three of the four new regulations promulgated by the USIA in response to the court's

order. For this reason, the Ninth Circuit dismissed most of the USIA's appeal as moot. *Bullfrog Films, Inc. v. Wick,* 959 F.2d 778, 781 (9th Cir.1992) *(Bullfrog II ).* The case was remanded to this court for reconsideration of the sole provision of the new regulations which had not been superseded by Section 207. *Id.* at 781–82.

With respect to the issue of attorneys' fees under the EAJA, the court denied plaintiffs' motion for fees on the ground that, with respect *Bullfrog I,* the USIA's position was "substantially justified" under the Act, and, with respect to *Bullfrog II,* that it should be treated as a separate, post-judgment proceeding from *Bullfrog I* and that, as such, the motion was premature because the appeal with respect thereto was then still pending. The Ninth Circuit reversed with respect to *Bullfrog I,* holding that the USIA's position was not substantially justified. *Bullfrog Films, Inc. v. Wick,* 959 F.2d 782 (9th Cir.1992) *(Bullfrog III ).* However the determination that *Bullfrog II* should be treated as a separate proceeding for purposes of the EAJA's prevailing party/final judgment rule was affirmed. *Id.*

Pursuant to the mandate in *Bullfrog III,* plaintiffs have now filed their renewed motion for attorneys' fees. They seek fees and costs for both *Bullfrog I* and *Bullfrog II.*[1] Plaintiffs seek fees of $217,974.18[2] and costs of $15,620.37. The USIA contends that plaintiffs' request should be reduced by at least $139,000 because: (1) plaintiffs are not entitled to fees for *Bullfrog II;* (2) plaintiffs' calculations are based on an inflated and incorrect hourly rate; and (3) plaintiffs request fees for duplicative and unnecessary work.

### DISCUSSION

#### I. *Bullfrog II*

It is undisputed that plaintiffs are entitled to EAJA fees for *Bullfrog I.* The Ninth

---

1. Plaintiffs seek attorneys' fees on appeal, as well as in the trial court. Pursuant to Ninth Circuit Rule 39–1.8, the Circuit transferred to this court consideration of plaintiffs' request for EAJA attorneys' fees on appeal.

2. If the All–Items Consumer Price Index, rather than the Personal Services component of that index, is applied to increase the statutory base rate of $75.00 per hour, this amount would be substantially reduced.

Circuit so held. *Bullfrog III*, 959 F.2d 782. To be entitled to fees for *Bullfrog II*, plaintiffs must establish that they were "prevailing parties," and defendants must fail to establish that the position of the USIA was "substantially justified" or that "special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). Defendants contend that plaintiffs are not prevailing parties and that the USIA's position was substantially justified.[3] At issue are fees claimed for 226.75 hours incurred by David Cole and related costs of $4,039.45.

### (a) *Prevailing Party Status*

■ Defendants contend that under the EAJA's "final judgment" rule, § 2412(d)(1)(B) & (2)(G), plaintiffs are not prevailing parties because no final judgment has been rendered in *Bullfrog II*. However, it is well-settled in this Circuit that a final judgment is not a prerequisite to an award of fees under the EAJA. To establish prevailing party status, a party must demonstrate that "(1) as a factual matter, the relief sought by the lawsuit was in fact obtained as a result of having brought the action, and (2) there was a legal basis for the plaintiffs' claim." *Andrew v. Bowen*, 837 F.2d 875, 877 (9th Cir.1988). Defendants cannot, and do not, contest the second prong of this test. They do, however, contend that plaintiffs do not meet the first requirement because, since Section 207 was not enacted at USIA's request, the relief obtained under the new statute was not "obtained as a result of the lawsuit."

Plaintiffs contend that this litigation was the catalyst in sparking enactment of Section 207. By its enactment, plaintiffs achieved most of the relief they sought in this action.[4] Although the legislation was not sought by the USIA, defendants concede that it did result from plaintiffs' lobbying efforts. It defies common sense, then, to contend, as the USIA does, that this does not mean that plaintiffs achieved their goals "through" the

litigation. This position has previously been rejected, *Coyote v. Roberts*, 502 F.Supp. 1342 (D.R.I.1980), and the court agrees. Courts have routinely granted prevailing party status to plaintiffs when legislative relief is obtained in response to a lawsuit. *E.g., American Constitutional Party v. Munro*, 650 F.2d 184, 187 (9th Cir.1981); *Hendrickson v. Branstad*, 934 F.2d 158, 161 (8th Cir.1991); *Hyatt v. Heckler*, 807 F.2d 376, 382 (4th Cir.1986).

The litigation only need be a "material factor" in the legislative process. *Munro*, 650 F.2d at 188. Here, the litigation was at least a material factor in bringing about enactment of Section 207. The House Report specifically refers to the USIA's response to this court's order and criticizes the agency's implementation of the Beirut Agreement which this litigation first brought to public light. *See* H.R.Rep. No. 53, 102d Cong., 1st Sess. 65–66 (1991), *reprinted in* 1991 U.S.C.C.A.N. 384, 419–20; *see also* H.R.Conf. Rep. No. 238, 102d Cong., 1st Sess. 126 (1991), *reprinted in* 1991 U.S.C.C.A.N. 384, 468. Testimony about this litigation by plaintiffs is a part of the legislative history. *Free Trade in Ideas*, Hearings Before the Subcommittee on Courts, Intellectual Property, and the Administration of Justice of the House Committee on the Judiciary, 101st Cong., 1st Sess. 151 (Statement of Pamela C. Jones) (May 3 & 4, 1989); *Restrictions on International Travel*, Hearings Before Subcommittee on International Economic Policy and Trade and on International Operations of the House Committee on Foreign Relations, 101st Cong., 2d Sess. 113 (Statement of John Abrahall) (Mar. 13, 1990).

The court finds that this litigation was, at least, a "material factor" in bringing about enactment of Section 207. Accordingly, plaintiffs are prevailing parties in *Bullfrog II*.

### (b) *Substantial Justification*

■ The "position of the United States" under § 2412(d)(1)(A) includes both the un-

---

**3.** Defendants make no contention that any special circumstances exist warranting denial of fees.

**4.** That the validity of one of the four new regulations still remains in question does not detract

from plaintiffs' prevailing status, since they "have obtained some of the relief they sought." *Texas State Teachers Ass'n v. Garland Ind. School Dist.*, 489 U.S. 782, 793, 109 S.Ct. 1486, 1493, 103 L.Ed.2d 866 (1989).

derlying agency action and the government's position in the litigation. *Andrew v. Bowen*, 837 F.2d at 878. What the government must show is that its position had a "reasonable basis both in law and fact." *Oregon Environmental Council v. Kunzman*, 817 F.2d 484, 498 (9th Cir.1987).

#### (i) The "propaganda" label

■ One of the challenged regulations authorized the USIA to label certain materials as "propaganda," even though the materials were educational and had been certified as such. The USIA contends that this regulation was substantially justified because the labelling of films as "propaganda," at least in some circumstances, is constitutional. *See Meese v. Keene*, 481 U.S. 465, 485, 107 S.Ct. 1862, 1873, 95 L.Ed.2d 415 (1987). Because a position or practice is not unconstitutional does not mean that, in all circumstances, it is substantially justified. Unlike *Meese*, where the government agency was carrying out a statutorily mandated duty, here, affixing the propaganda label on educational materials is not only not required either by the Treaty or its enabling statute, it *contravenes* the purpose of certification under the Beirut Agreement.

In *Bullfrog I*, the USIA was told in the strongest terms that its duty was to *avoid* content-based judgments. In spite of that admonition, by the "propaganda" regulation, the USIA sought to place its content-based disapproval on films which the Constitution required it to certify as educational. There is *no* justification for the USIA reaching beyond its duty under the Beirut Agreement in this regard. Its action was entirely gratuitous and not substantially justified.

#### (ii) Are the remaining regulations content-based?

■ With respect to the remaining regulations, the USIA contends that it followed the methodology test used by the Department of the Treasury in determining whether an organization is "educational" for tax exemption purposes. *See National Alliance v. United States*, 710 F.2d 868, 874 (D.C.Cir.1983) (upholding use of the methodology test). However, comparison of these regulations with the methodology test reveals that these regu-

lations go much further in regulating content and expression. In addition to being impermissibly vague, the regulations make the USIA the arbiter of which methods are "generally accepted" and which facts represent the "current state of factual knowledge." Similarly, requiring material to "acknowledge, present or refer" to the existence of other viewpoints is patently content-based, as opposed to the methodology test's simple requirement that viewpoints not be based on "distorted" facts.

The Beirut Agreement does not mandate the content-based distinctions set forth in the regulations. Therefore, the USIA's argument about the tension between the First Amendment and the Treaty is specious. Because the Treaty does not require content-based certifications, there is no compelling interest in the regulations. This message was made clear in *Bullfrog I*. In essence, bent on its apparent censorial mission, the USIA choose to ignore its duty under the Treaty and the Constitution in promulgating the new regulations. Its position was not substantially justified. If, as the Circuit held, the USIA's position in *Bullfrog I* was not substantially justified, its position in *Bullfrog II* was even less justified.

For the reasons set forth above, the court concludes that plaintiffs are entitled to reasonable fees and costs for *Bullfrog II*.

### II. *REASONABLE FEES*

#### (a) *Applicable Hourly Rate*

■ The EAJA caps the hourly rate for attorneys' fees at $75, but permits an upward adjustment for inflation. 28 U.S.C. § 2412(d)(2)(A)(ii). Although the parties agree that an upward adjustment is appropriate, they dispute what that adjustment should be. Defendants contend that the adjustment should be based on the All–Items Consumer Price Index (CPI–U); plaintiffs contend that a sub-category of that index that covers only personal services, including legal services, should be used.

While the Ninth Circuit has not directly addressed the issue, it has regularly approved application of the CPI–U index as the

proper measure of inflation. *See, e.g., Russell v. Sullivan,* 930 F.2d 1443, 1446 (9th Cir.1991); *Animal Lovers Volunteer Ass'n, Inc. v. Carlucci,* 867 F.2d 1224, 1227 (9th Cir.1989); *Ramon–Sepulveda v. INS,* 863 F.2d 1458, 1463 (9th Cir.1988). Two other circuits have directly addressed the issue and both have held that the CPI–U index, rather than personal services sub-index, provides the appropriate measure of inflation. *DeWalt v. Sullivan,* 963 F.2d 27 (3d Cir.1992); *Sullivan v. Sullivan,* 958 F.2d 574, 576–77 (4th Cir.1992).

The upward adjustment authorized by the statute is for "an increase in the cost of living," § 2412(d)(2)(A)(ii), not an increase in the cost of personal services or legal services. The court agrees with the Third and Fourth Circuits that the CPI–U index is the proper index to measure the increase in the cost of living.

■ The parties further disagree over whether the current or historical index should be used. Plaintiffs maintain that the current index should be used; defendants argue that the CPI–U for the year in which the work was performed should be used. The formula adopted by this Circuit in calculating the cost of living increase is to multiply the $75 statutory rate by the *most recent* CPI–U figure, then to divide that product by the CPI–U for October, 1981, the date the EAJA was enacted. *Ramon–Sepulveda,* 863 F.2d at 1463 n. 4 & 1464 n. 6. The same formula was followed in *Russell,* 930 F.2d at 1446, and *Animal Lovers,* 867 F.2d at 1227 & n. 2. The court accepts this formula as the law of the circuit.[5]

Based on the October, 1981 CPI–U index of 93.0 and the May, 1992 index of 146.0, the applicable hourly rate is $117.74.[6]

(b) *Reasonableness of the Hours Claimed*

Plaintiffs claim fees for 1,359.25 hours, billed by 11 attorneys.[7]

Defendants claim, first, that 226.75 hours incurred by David Cole in *Bullfrog II* should not be compensated because plaintiffs were not prevailing parties and the government's position was substantially justified. These arguments have been rejected on Part I, above.

■ Next, defendants contend that 115.60 hours incurred by Stuart Sarnoff and Jonathan Hines should not be compensated because they were duplicative. This contention is predicated on the fact that David Cole claims 51.5 hours for work on the same brief. However, this supplemental brief in *Bullfrog I* was on a key issue which the court felt had not been adequately briefed and was due on short notice. Plaintiffs cannot be faulted for treating this as a "crash" project and devoting extensive and intensive time to its completion. The value of the time is not necessarily reflected in the length of the brief. A sufficient showing has been made and the court finds that the work of all three attorneys on the supplemental brief was reasonably incurred.[8]

■ The USIA next argues that a modest 8.75 hours spent in communicating with the press and with *amici curiae* were unnecessary to the prosecution of the case. Consultations with *amici* is a legitimate part of an attorney's function in a case of this na-

---

**5.** Thus, the USIA's citation of out-of-the-circuit authority is unavailing. Also, its argument that this method violates the rule against recovering interest against the government is mistaken. The USIA cites two Title VII cases in support of this argument. However, unlike Title VII, the EAJA expressly authorizes an upward adjustment for cost of living increases.

**6.** The court agrees that the market billing rates for all counsel claiming fees would easily exceed $117.74 per hour. The court's own experience teaches it that in the larger metropolitan areas, the hourly rates of even first year associates are $120.00 and above.

**7.** The highest number of hours were billed by David Cole—1053.75 hours, Sarah Wunsch—88.25 hours, Stuart Sarnoff—67.80 hours, Jonathan Hines 47.80 hours, and Dan Stormer—46.90 hours.

**8.** The USIA also contends that Sarnoff and Hines should not be compensated because they were not attorneys of record. This apparently was a *pro bono* project of Debevoise & Plimpton. There is no such requirement in the EAJA. In fact, as plaintiffs point out, paralegals, who never enter an appearance in the case, are routinely compensated under the EAJA. *See, e.g., DiGennaro v. Bowen,* 666 F.Supp. 426 (E.D.N.Y.1987).

ture. So too is the minimal amount of time billed for contact with the press. This case generated a reasonable amount of publicity. As shown above, that publicity played a substantial part in calling the problems with the Beirut Agreement's implementation to the attention of Congress. This time was legitimately billed to the case and is reasonable, both in nature and amount.

The USIA argues that the approximately 44 hours of travel time claimed should be charged at one-half the full rate because it is "nonproductive." Plaintiffs have disputed this and have made a showing that the time was spent in case preparation. In light of the already low rate, the court accepts plaintiffs' showing.

Finally, the USIA challenges 5.25 hours billed for lobbying activities. Plaintiffs are willing to exclude these hours from their fee request. The court agrees. Therefore, the total number of hours of attorneys' time incurred to date in this action which the court finds to have been reasonably incurred is 1,354 (1359.25 − 5.25). Thus, the court finds that reasonable attorneys' fees to be awarded to plaintiffs under the EAJA is (1,354 × $117.74) $159,419.96.

### III. *COSTS*

■ The EAJA provides that a plaintiff may recover "costs, as enumerated in [28 U.S.C. § 1920]." 28 U.S.C. § 2412(a). Additionally ... a plaintiff may be awarded "fees and other expenses." 28 U.S.C. § 2412(d)(1)(A). *NAACP v. Donovan,* 554 F.Supp. 715, 719 (D.D.C.1982). Thus, all reasonable and necessary expenses incurred in a case, which are customarily charged to the client, are recoverable under the EAJA. *See International Woodworkers of Am., Local 3–98 v. Donovan,* 792 F.2d 762, 767 (9th Cir.1986).

Again, for the reasons already stated, the court rejects defendants contention that a blanket disallowance should be made for costs and expenses incurred in *Bullfrog II.* Defendants also argue that copying, Federal Express and telephone charges should be substantially reduced. However, the court is satisfied that plaintiffs have shown that these expenses were reasonably and necessarily

incurred. The EAJA requires only that such costs be reasonable, not that the court need be niggardly in reviewing such requests. Plaintiffs' request for costs is granted *in toto.*

### ORDER

IT IS ORDERED that, pursuant to the EAJA, plaintiffs shall recover of the United States reasonable attorneys' fees in the sum of $159,419.96, plus reasonable costs and expenses in the sum of $15,620.37, for a total award of fees and expenses of $175,040.33.

This order is without prejudice to any future motion for EAJA fees and costs, not considered by this order, as future circumstances may warrant.