**EARTH ISLAND INSTITUTE, INC., Donald May, and David Jeffries, Plaintiffs,**

v.

**SOUTHERN CALIFORNIA EDISON CO., Defendant.**

**No. 90 CV 1535–B JFS.**

United States District Court, S.D. California.

Feb. 7, 2000.

Anne Lee Eng, San Francisco, CA, for Plaintiffs.

Douglas P. Ditonto, Rosemead, CA, for Defendant.

## ORDER GRANTING PLAINTIFFS' MOTION FOR SUPPLEMENTAL AWARD OF ATTORNEY'S FEES AND COSTS

STIVEN, United States Magistrate Judge.

On January 14, 2000, the Court heard oral argument on Plaintiffs' motion for a supplemental award of attorney's fees and costs. Ms. Anne Lee Eng and Mr. John Gordon[1] appeared on behalf of Plaintiffs. Mr. Nino Mascolo appeared on behalf of Defendant. After reviewing the pleadings and hearing oral argument on the matter, this Court hereby GRANTS Plaintiffs' motion for a supplemental award of attorney's fees and costs.

## I. BACKGROUND

On June 14, 1993, the District Court issued an "Order Approving Stipulation of Settlement and Consent Decree," which approved the parties' Stipulation of Settlement and Consent Decree ("Consent Decree") in this case.[2] The Consent Decree requires Defendant to implement various mitigation measures, including the acquisition of additional acreage, and the restoration of such additional acreage to become functional wetlands consistent with the design objectives as set forth in the Final Restoration Plan for restoration of the San Dieguito wetlands. (Consent Decree at 7–8). The Plan is to be submitted to the California Coastal Commission for approval. (*Id.* at 8). Since the effective date of the Consent Decree, the Court has monitored Defendant's activities with respect to creating additional acreage, in order to ensure Defendant's compliance with the Consent Decree. Once Defendant submits a final plan for the San Dieguito wetland project, along with a full account of the specific acreage subject to this settlement, this Court will issue a Final Order on the allocation of Consent Decree funds.

As of January 14, 2000, the day of the motion hearing before this Court, and nearly seven years after the entry of the Consent Decree, Defendant has not yet presented the Final Restoration Plan to the California Coastal Commission. At the evidentiary hearing, Defendant indicated to the Court that it estimated the Plan would be complete within a year, although Defendant admitted, and Plaintiff agreed, that the time for completion is difficult to estimate.

In the underlying case, the District Court awarded Plaintiffs $1,408,594.94 in attorney's fees. *See Earth Island Institute, Inc. v. Southern California Edison, Co.*, 838 F.Supp. 458, 467 (S.D.Cal.1993). From the time of the effective date of the Consent Decree to the present, Plaintiffs have continuously monitored Defendant's activities with respect to additional acreage in order to ensure Defendant's compliance with the Consent Decree.

Paragraph II.H. of the Consent Decree provides that any disputes regarding enforcement of the Decree shall be subject to mediation and then arbitration before a United States Magistrate Judge assigned to the case. (Consent Decree at 6–7). In November of 1995, because of Defendant's delays in implementing the planned restoration, Plaintiffs invoked this provision of the Decree. A mediation was conducted in May of 1996 before Attorney Michael E. Quinton. The mediation did not resolve the disputes between the parties. Later in 1996 Plaintiffs demanded arbitration and an arbitration hearing was conducted on March 21, 1997, by the undersigned Magistrate Judge. Subsequent hearings were conducted on August 19 and October 10, 1997. On December 17, 1997, this Court issued an Order requiring that Defendant place the sum of $7.5 million dollars in an interest bearing account with interest accruing at a rate of 5.25% annually from

---

1. Mr. Gordon is a student who presented oral argument to the Court under the supervision of Ms. Eng.

2. The Stipulation of Settlement and Consent Decree was signed by counsel and party representatives between the dates of December 24, 1992 and January 15, 1993.

May 23, 1996, and requiring Defendant to submit Quarterly Status Reports to the Court and to Plaintiffs pending a Final Order of this Court. Further hearings have been conducted and Court Orders have been issued in the succeeding two years. Plaintiffs now bring this motion for a supplemental award of attorney's fees and costs to reimburse Plaintiffs' counsel for post-judgment monitoring work.

## II. DISCUSSION

Plaintiffs assert the following arguments in support of their motion: (1) Plaintiffs are entitled to an award of supplemental attorney's fees pursuant to Section 505(d) of the Federal Water Pollution Control Act ("Clean Water Act"), 33 U.S.C. § 1365(d); (2) the Consent Decree is silent with respect to an award of attorney's fees for post-judgment monitoring; and (3) principles of equity dictate that this Court use its discretion and award attorney's fees to Plaintiffs.

Defendant opposes Plaintiffs' motion, arguing that Plaintiffs fail to satisfy the requirements of Section 505(d) of the Clean Water Act, arguing, in particular, that Plaintiffs are not the "prevailing party" as required by Section 505(d). Defendant also contends that the language of the Consent Decree forbids an award of supplemental attorney's fees to Plaintiffs and that the balance of equities is not in favor of granting Plaintiffs' motion. Defendant argues that, if the Court finds an award of supplemental attorney's fees to be appropriate, the Court should delay awarding those fees until the Court's issuance of a Final Order on the matter.

### A. Section 505(d) of the Clean Water Act

Plaintiffs argue entitlement to an award of supplemental attorney's fees pursuant to Section 505(d) of the Clean Water Act. Although, under the so called "American Rule", each side is normally expected to bear its own fees and costs, the Clean Water Act provides for the payment of another party's attorney's fees under certain circumstances. Under Section 505(d),

The court, in issuing any final order in any action brought pursuant to this section, may award costs of litigation (including reasonable attorney and expert witness fees) to any prevailing or substantially prevailing party, whenever the court determines such award is appropriate. The court may, if a temporary restraining order or preliminary injunction is sought, require the filing of a bond or equivalent security in accordance with the Federal Rules of Civil Procedure.

33 U.S.C. § 1365(d).

### 1. Prevailing or Substantially Prevailing Party

The threshold determination for the Court is whether Plaintiffs are a "prevailing" or "substantially prevailing" party under Section 505(d). Defendant argues that Plaintiffs are not a "prevailing party" because the *public* received the benefits of the outcome of the underlying lawsuit, not the Plaintiffs. Defendant also argues that Plaintiffs cannot be the prevailing party because the parties entered into a settlement agreement, and therefore Defendant did not admit any fault. Further, Defendant notes that, on several of the individual issues that arose in the litigation since the time of the Consent Decree, Plaintiffs cannot be seen as the "prevailing party".

■ To be considered a "prevailing party", the party must "have succeeded on 'any significant issue in litigation which achieves some of the benefit'" sought. *Earth Island*, 838 F.Supp. at 464 (1993) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). The court in *Earth Island*, 838 F.Supp. at 465 (1993), further stated:

... a plaintiff "prevails" when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff.

*Id.* (citing *Farrar v. Hobby,* 506 U.S. 103, 111–12, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992)).[3]

█ This Court finds that Plaintiffs are in fact a "prevailing" or "substantially prevailing" party in this litigation for purposes of awarding attorney's fees. Plaintiffs "prevailed" on several significant issues raised since the time of the Consent Decree, and have, to some extent, achieved the benefits sought. Also, Defendant has in fact conformed its behavior, as seen by the slow but deliberate steps which have been taken toward providing for restoration of the additional acreage thus far. Plaintiffs "directly benefit" from Defendant's modified behavior in this regard, since Plaintiffs are an entity and two individuals with interests in environmental protection generally and restoration of the additional acreage specifically.

Defendant argues that the public, not the Plaintiffs, received the benefits of the litigation and that therefore Plaintiffs are not the "prevailing party". To support this argument, Defendant cites *Nadeau v. Helgemoe,* 581 F.2d 275 (1st Cir.1978), which states that unless a defendant's conduct, however beneficial it may be to a plaintiff's interest, is required by law, "then defendants must be held to have acted gratuitously and plaintiffs have not prevailed in a legal sense." *Id.* at 281. Defendant argues that the Consent Decree "caused actions by [Defendant] that were not legally required" (Defendant's Opposition at 11), implying that Defendant's actions were gratuitous acts, and that therefore Plaintiffs cannot be seen as the "prevailing party".

The Court is not persuaded by Defendant's argument on this point. Rather, the Court agrees with Plaintiffs' argument that Defendant avoided a long complex lawsuit by entering into the settlement agreement, and that Plaintiffs gave up sig-nificant rights to pursue their claims by entering into the settlement agreement. Clearly, any benefit to Plaintiffs, or the public, arising from the lawsuit cannot be seen as merely "gratuitous". Further, the fact that the public benefits from the actions to be performed under the Consent Decree does not in any way devalue the benefit to Plaintiffs. In the underlying case, *Earth Island,* 838 F.Supp. 458 (1993), Judge Brewster dealt with the "prevailing party" and "public benefit" issue noting that, since the case is a citizen suit, recovery would not "directly" benefit Plaintiffs any more than it would other citizens. *Id.* at 465. However, Judge Brewster went on to say that, "Nevertheless, since the settlement in this case obligates defendant to commit funds to several projects which directly benefit the public, one of which is a joint project with, and presumably benefitting, plaintiff Earth Island, the court holds that plaintiffs are "prevailing" for purposes of attorneys fees analysis." *Id.*

Likewise, this Court holds that Plaintiffs are a "prevailing" or "substantially prevailing" party under Section 505(d).

### 2. Reasonable Costs of Litigation

After determining that Plaintiffs are a "prevailing party", the Court must determine whether the fees and costs incurred by Plaintiffs' attorneys were *necessary* and whether the estimate of those fees and costs provided by Plaintiffs is *reasonable.*

Defendant argues that a large portion of the costs requested by Plaintiffs are not costs of litigation under Section 505(d). Defendant argues that, under *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), the degree of a plaintiff's overall success goes to the reasonableness of a fee award, and that where the plaintiff has only achieved limited success, the only reasonable fee is usually no fee at all. *Id.* at 424, 103 S.Ct. 1933. *See Farrar,* 506 U.S. at 117, 113 S.Ct. 566

---

**3.** Because only minimal published case law exists on issues of attorney's fees under the Clean Water Act, the Court adopts the standards discussed in the above-mentioned cases. *See Earth Island,* 838 F.Supp. at 465, n. 6. (1993) (adopting standards from civil rights cases in deciding whether to award attorney's fees and costs).

(1992). Thus, Defendant argues that the minimal success obtained by Plaintiffs does not justify an award of attorney's fees.

Conversely, Plaintiffs argue that the monitoring they provided was necessary to ensure compliance with the Consent Decree and that the attorney's fees and costs requested are a reasonable estimation of the time spent on the project. Plaintiff has provided the Court with the Declaration of Ms. Eng, filed September 10, 1999, which sets forth fees and costs incurred by Plaintiffs' attorneys for work performed in administrative and arbitration proceedings and for post-judgment monitoring of the Consent Decree for the period of June 29, 1994 to the present date of that Declaration (September 10, 1999).

In *United States v. City of San Diego*, 18 F.Supp.2d 1090 (S.D.Cal.1998), *corrected* 32 F.Supp.2d 1360 (S.D.Cal.1998), Judge Brewster held that the Sierra Club should receive attorney's fees for its participation in EPA waiver permit proceedings because "the outcome of the administrative proceedings was inextricably tied to the resolution of the litigation, and participation in those proceedings was necessary to advocate the prevailing parties' litigation-specific interests." *Id.* at 1101. Judge Brewster further held that Sierra Club's additional request for attorney's fees for its participation in Regional Water Quality Control Board proceedings was *not* justified. *Id.* Judge Brewster stated, "Whereas participation in the EPA proceedings was narrowly tailored to the purpose of achieving a specific litigation goal, the Sierra Club's participation in Water Quality Control Board proceedings was for more general purposes not essential to the outcome of the case." *Id.*

 This Court finds that Plaintiffs' monitoring of Defendant's actions under the Consent Decree with respect to additional acreage were, and still are, necessary to the resolution of this litigation and are closely linked to Plaintiffs' litigation interests. While it is acknowledged that some of the fees sought are for time spent in communication with the California Coastal Commission and/or San Dieguito Joint Powers Authority, those agencies' participation is integral to the approval process and "inextricably tied to the resolution of the litigation." Plaintiffs have aided the Court in "pushing along" the resolution of this matter through their continued monitoring of the restoration project. Plaintiffs have also aided the Court in evaluating whether Defendant is complying with the terms of the Consent Decree through their responses to Defendant's Quarterly Status Reports. Plaintiffs, being comprised of an entity and two persons dedicated to environmental restoration issues, have a legitimate interest in seeing that Defendants comply with the Consent Decree. The monitoring performed by Plaintiffs is narrowly tailored to the litigation goal of ensuring Defendant's compliance with the Consent Decree.

Further, the Court finds, and Defendant, for the most part, does not dispute,[4] that the attorney's fees and costs requested by Plaintiffs are reasonable. Plaintiffs' counsel noted at the January 14, 1999 hearing that her estimates were conservative and accurate, and the Court, upon review of the documents, finds this to be the case. Although a court has discretion to decrease the award sought, this Court does not find Plaintiffs' fee calculation to be based on fees that are "excessive, redundant, or otherwise unnecessary." *See Hensley*, 461 U.S. at 434, 103 S.Ct. 1933.

For the above-stated reasons, the Court finds that Plaintiffs have satisfied the requirements of Section 505(d) of the Clean Water Act, and that, under the Clean Water Act, awarding Plaintiffs attorney's fees and costs is appropriate.[5]

---

4. At the January 14, 2000 motion hearing, counsel for Defendant represented that he, for the most part, believed Plaintiffs' calculations and estimates of attorney's fees and costs to be reasonable.

5. It should be noted that Defendant asserts the argument that a "final order" under Section 505(d) has not been issued, because the Court has yet to rule on Plaintiffs' request to require the Consent Decree wetland restora-

## B. The Consent Decree

As stated above, the Court finds an award of attorney's fees and costs appropriate under Section 505(d). Additionally, for reasons stated below, the Court finds nothing in the language of the Consent Decree itself that prohibits such an award.

Defendant argues that the language of the Consent Decree expressly prohibits an award of additional attorney's fees. Under *Aho v. Clark,* 608 F.2d 365 (9th Cir. 1979), a case cited by Defendant, no supplemental fees were awarded when the defendant did not expressly agree to pay for such supplemental fee awards. However, Plaintiffs argue that *Aho* involved special circumstances based on its particular facts.

Plaintiffs argue that the Consent Decree is silent on the issue of supplemental fee awards and does not expressly limit or prohibit Plaintiffs from seeking additional fees for their work in monitoring the Consent Decree during the post-judgment period. Plaintiffs cite *Keith v. Volpe,* 833 F.2d 850, 858 (9th Cir.1987), for the proposition that post-judgment monitoring is a compensable activity.

Section IX of the Consent Decree, entitled "Attorneys' Fees and Costs" states:

A. Except as expressly provided for herein, all parties shall bear their own attorneys' fees and costs of suit. However, plaintiffs may make and Edison will not oppose an application to have the Court assess plaintiffs' attorneys' fees and litigation expenses, including expert witness fees and costs, in the amount of $2,000,000 against Edison.

B. Within ten days following the later of (a) the Court's approval and entry of this Consent Decree, and (b) the withdrawal and dismissal by plaintiffs and Friends of the Earth of each of their Petitions for Review (appeals) before the State Water Board relating to the Regional Water Board's decision pertaining to SONGS NPDES issues, Edison shall pay the amount awarded to plaintiffs' counsel as attorneys' fees and litigation expenses (in an amount not to exceed the sum of $2,000,000), which payment shall be in full and final satisfaction of the Court's assessment and award of attorneys' fees and litigation expenses.

(Consent Decree at 15–16).

■ The language of the Consent Decree clearly states that "[e]xcept as expressly provided for herein, all parties shall bear their own attorneys' fees and costs of suit." *Id.* While it is true that the Court does not find any provision in the agreement itself that expressly provides for an award of *supplemental* attorney's fees, the Decree does allow for an award of attorney's fees, and Defendant agreed it would not oppose such application in an amount up to $2,000,000. Following entry of the Consent Decree, the Court awarded attorney's fees in the amount of $1,408,-594.94. Nothing in the language of the Decree prohibits a further application for supplemental fees. The fact that the Consent Decree does not expressly address the awarding of attorney's fees for post-judgment monitoring may reflect the fact that the parties might not have contemplated at the time of drafting the Consent Decree that monitoring of the kind required here would continue for eight years and that substantial additional fees would be incurred in the process.

Plaintiffs emphasize that at the time of drafting, Plaintiffs never imagined that they would continue to be involved in this

tion funds to be used at sites other than San Dieguito. Defendants argue that Plaintiffs admit that a final order has not been issued because Plaintiffs state that their motion may also be regarded as an "interim" fee request.

This Court acknowledges that a Final Order concerning the allocation of Consent Decree funds has yet to issue. However, for purposes of 505(d), this Court finds that a "final order" was issued in the case in 1993 by Judge Brewster when he approved an award of attorney's fees. The present application is deemed an interim application for fees for monitoring the enforcement of the Consent Decree pending a concluding Final Order approving the Final Restoration Plan and allocation of the funds which have been set aside.

type of monitoring activity for so many years.[6] The Consent Decree was signed in December and January of 1992 and 1993, and full compliance with the Consent Decree was reasonably contemplated to have occurred within three to five years. One of the attorneys for Plaintiffs, Mr. Charles Crandall, who participated in the drafting of the Consent Decree in 1992, informed the Court at the January 14, 2000 motion hearing that, back in 1992, he did not contemplate that the monitoring by Plaintiffs would have to continue for so long.

The Court agrees that steps toward full compliance with the Consent Decree have been unduly delayed. Also, the Court accepts Plaintiffs' position that it was not contemplated at the time of the drafting of Consent Decree that it would be necessary for Plaintiffs to incur attorney's fees for post-judgment work of the type or in the amount now sought. Furthermore, the amount of attorney's fees awarded at the time of the Consent Decree was substantially less than the amount to which Defendant agreed it would not object. The Court takes note of Plaintiffs' argument under *Keith v. Volpe*, 833 F.2d 850 (9th Cir.1987), that post-judgment monitoring is a compensable activity and that the fact post-judgment attorney's fees and costs were not expressly provided for in the Consent Decree does not preclude their being awarded at this time. *See Id.* Plaintiffs emphasize that the Court should view a Consent Decree as a "working constitution".

The Court is aware that Plaintiffs will continue to incur costs in monitoring the activities to be performed by Defendant under the Consent Decree. In deciding to make this interim award of attorney's fees and costs, the Court has considered the fact that Earth Island is a non-profit organization, and, as such, its attorneys have had to "self-fund" much of the work involving this litigation. Therefore, the Court, in its discretion, finds an interim award of supplemental fees and costs to be appropriate.

Under *Hanrahan v. Hampton*, 446 U.S. 754, 757, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980), a party may be awarded attorney's fees at an interlocutory stage of the proceedings. Here, it is unclear when the Final Order will issue. At the January 14, 2000 hearing before this Court, both sides indicated that there is much uncertainty with respect to estimating the exact date of when Defendant will provide the Coastal Commission with the Final Restoration Plan for Additional Acreage. As such, the Court finds it appropriate to grant an interim award of attorney's fees and costs at this time.

For the above-stated reasons, the Court hereby awards Plaintiffs the full amount sought ($88,068.26) for attorney's fees and costs incurred. The Court retains the right to award further interim fees and costs to Plaintiffs, as the Court sees proper, during the period of time until the Final Order is issued by this Court.

### III. CONCLUSION

Upon consideration of the documents filed with the Court and oral argument presented, the Court hereby GRANTS Plaintiff's motion for a supplemental award of attorney's fees and costs. Plaintiffs shall be awarded $88,068.26 in attorney's fees and costs pursuant to this Order.

**IT IS SO ORDERED.**

---

**6.** The Court notes that Paragraph III.A.6 of the Consent Decree does provide for "monitoring", but contemplates that *Defendant* would conduct such monitoring to ensure that the additional acreage *restored* continued to meet its design objectives. (Consent Decree at 9–10). Defendant is to provide $100,000 for a written Assessment Report at a time 10–20 years after the effective date of the Decree to verify the continuation of functional wetlands. (*Id.*).